*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BETSY WHITE,

            *Plaintiff-Appellant,*

     *v.*

WYNDHAM VACATION OWNERSHIP, INC.,
FAIRFIELD RESORTS, and GERALD HAYES,

            *Defendants-Appellees.*

No. 09-5626

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 08-00405—Thomas A. Varlan, District Judge.

Decided and Filed: August 11, 2010

Before: CLAY and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Michael S. Shipwash, LAW OFFICE OF MICHAEL S. SHIPWASH, Knoxville, Tennessee, for Appellant. R. Eddie Wayland, KING & BALLOW, Nashville, Tennessee, Catherine H. Molloy, WALLER, LANDSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellees. Gerald Hayes, Seviersville, Tennessee, pro se.

    McKEAGUE, J., delivered the opinion of the court, in which POLSTER, D. J., joined. CLAY, J. (pp. 17-24), delivered a separate dissenting opinion.

_____

## OPINION

_____

    McKEAGUE, Circuit Judge. Plaintiff-Appellant Betsy White appeals the district court's grant of summary judgment to Defendants-Appellees Wyndham Vacation

---

[*] The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

Ownership, Fairfield Resorts, and Gerald Hayes based on a claim of judicial estoppel. White did not disclose her sexual harassment claim against Defendants in her initial bankruptcy filings. Because White's limited attempts to disclose the harassment claim before Defendants filed their motion to dismiss were inadequate, we **AFFIRM** the district court's grant of summary judgment.

## I. BACKGROUND

Around June of 2001, White was hired to work in the office of Defendants Wyndham and Fairfield. On November 15, 2006 White filed a complaint with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") ("harassment claim") based on allegations that Defendant Hayes subjected White to sexually suggestive and derogatory comments as well as to improper sexual contact at work while she was employed by Defendants Wyndham and Fairfield. On May 27, 2008, White requested that the EEOC issue her a Notice of Right to Sue, which the EEOC granted on July 8, 2008.

On August 8, 2008, assisted by counsel, White filed a Chapter 13 Voluntary Petition and Plan in the United States Bankruptcy Court for the Eastern District of Tennessee. In her bankruptcy filings, White did not mention her harassment claim against the Defendants. White should have listed her claims in two sections of the Voluntary Petition and Plan. First, in the Statement of Financial Affairs, under Section 4, titled "Suits and administrative proceedings, executions, garnishments, and attachments." This section required White to list all claims and administrative proceedings to which she was a party within one year immediately preceding the filing of her bankruptcy case. Although White failed to list the harassment claim in that section, she did list another proceeding to which she was a party within the preceding year. White also failed to list the harassment claim as a personal asset on her bankruptcy schedules. In particular, Question 21 of "Schedule B – Personal Property" required White to list "other contingent and unliquidated claims of every nature . . . ." Question 21 also required her to give the estimated value of each claim. White swore, under

penalty of perjury, that her Statement of Financial Affairs and her answer to Question 21 were both true and accurate.

On August 12, 2008, the bankruptcy court entered an order scheduling the Plan Confirmation Hearing for October 1, 2008 and also ordered White to make payments to the trustee and directed her to attend a meeting of creditors on September 11, 2008. On October 1, 2008 the bankruptcy court conducted the Plan Confirmation Hearing. The harassment claim was not mentioned in the one page official transcript for the hearing.

On October 2, 2008, White filed her lawsuit against Defendants, seeking $250,000 in compensatory damages and $1 million in punitive damages. On October 3, 2008, White filed an "Application to Employ Counsel" with the bankruptcy court for the harassment claim. Her application did not identify whether she was the plaintiff or the defendant in the claim (although it did state that her attorney would be compensated through a 20% contingency fee), when the claim would be filed, the underlying facts giving rise to the claim, or the amount of the claim.[1]

On November 6, 2008, Defendants Wyndham and Fairfield filed a motion to dismiss on the grounds of judicial estoppel.[2] In response, White partially amended her "Statement of Financial Affairs" on November 11, 2008, to reflect her harassment claim under the category of "Suits and administrative proceedings, execution, garnishments and attachments." Even after amending that statement, White did not disclose the amount of the suit.

On November 11, 2008, White filed her response to Defendants' motion to dismiss on judicial estoppel grounds. She attached an amendment to her bankruptcy filings and included an affidavit from her bankruptcy attorney. The affidavit states in the relevant portion:

---

[1] In contrast, on October 20, 2008 White filed a complaint with the bankruptcy court noting that a creditor had potentially violated the automatic stay provision. (R. 10, Ex. 11.) This complaint provided the facts giving rise to the complaint, when those facts took place, and the relief that White was seeking.

[2] Pro se Defendant Hayes filed a written motion joining Wyndham's motion to dismiss on February 24, 2009.

5. Betsy White did inform me of her [harassment claim] when I met with her. At no time did Ms. White attempt to conceal, or otherwise, keep that information secret.

6. When I appeared in Court on Ms. White's bankruptcy, this lawsuit was discussed, as well as, any potential claims thereof.

7. I am unsure why documentation filed in her bankruptcy matter did not list this action, however we have subsequently filed an Amendment to cure this oversight.

(R. 12, Ex. A, pp. 1-2.)

## II.  ANALYSIS

The district court converted the Defendants' motion for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) into a motion for summary judgment. The district court then granted summary judgment for the Defendants based on judicial estoppel. *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 203-04 (6th Cir. 1998).

### *1.  Summary Judgment Standard*

This court reviews the district court's decision to grant summary judgment de novo. *Smith v. Henderson*, 376 F.3d 529, 553 (6th Cir. 2004). Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(c)(2). A genuine issue of material fact exists when, "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether this burden has been met by the movant, this court views the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, to survive summary judgment, the plaintiff must present affirmative evidence sufficient to show a genuine issue for trial. *Anderson*, 477 U.S. at 249. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## 2. *Judicial Estoppel*

This court reviews de novo the district court's application of judicial estoppel. *See Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008); *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). This doctrine is "utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002); *see also Eubanks*, 385 F.3d at 897 ("Judicial estoppel, however, should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'").

In the bankruptcy context, this court has previous noted that "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning*, 283 F.3d at 775-76 (citation omitted). Furthermore *Browning* noted that, "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Id.* at 776; *see also New Hampshire*, 532 U.S. at 753. Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) "where the debtor lacks knowledge of the factual basis of the undisclosed claims," and (2) where "the debtor has no motive for concealment." *Browning*, 283 F.3d at 776 (finding that the debtor there had, "no motive for concealment in light of its role as a debtor-in-possession, having all the rights and duties of a trustee").

### i.     Eubanks: *The absence of bad faith prevents the application of judicial estoppel*

In *Eubanks*, this court examined *Browning* and noted that the "absence of bad faith," was also a factor to consider in determining whether it was appropriate to grant judicial estoppel. 385 F.3d at 895. In deciding whether the application of judicial estoppel was appropriate, the court in *Eubanks* found it particularly significant that the plaintiffs actually made "numerous attempts" through their counsel to advise the bankruptcy court and the trustee of their claim and, therefore, that there was no evidence of "motive or intention" to conceal the potential claim. *Id.* at 898-99. The court concluded by noting that judicial estoppel was inappropriate, "[b]ecause this Court has previously held that evidence of an inadvertent omission of a claim in a previous bankruptcy proceeding is a reasonable and appropriate factor to consider when analyzing judicial estoppel's applicability." *Id.* at 899. *Eubanks* folded the absence of bad faith in under the inadvertence prong, made the determination of whether there was evidence of a "motive or intention" to conceal the potential claim critical to a finding of bad faith, and found that, in the circumstances of that case, the numerous attempts by the plaintiffs to cure an initial omission indicated that the omission was inadvertent, not intentional. *See Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 426 (6th Cir. July 6, 2005) ("Thus, under *Eubanks*, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional.").[3]

---

[3] Indeed, the facts in *Eubanks* certainly show that the plaintiffs there made "numerous attempts" to correct their initial omission of a lender-liability claim from their bankruptcy filings *before* the defendant filed a motion to dismiss based on judicial estoppel. In particular, before they filed their lender-liability lawsuit in state court, the plaintiffs in *Eubanks*: (1) orally informed the bankruptcy trustee of their claim during a meeting of the creditors. In response, the trustee instructed (both orally and by a letter sent on the same day) their counsel to send him all of the documents regarding the claim. The plaintiffs then: (2) sent the trustee the requested documents concerning the claim two days later; (3) contacted the trustee on several occasions over the next several months to determine whether he intended to pursue the claim on behalf of the estate; (4) amended their schedules in the bankruptcy matter to include defendant as a creditor on Schedule F (although, they failed to amend their schedule B to include the claim under potential assets); and (5) moved the bankruptcy court for a status conference on the issue of the lender liability claim. Ultimately, however, a "Report of No Distribution" by the trustee rendered the lender-liability lawsuit issue moot. *See Eubanks*, 385 F.3d at 895-96.

Furthermore, *after* the plaintiffs filed the lender-liability lawsuit and after the defendant filed a motion to dismiss on the basis of judicial estoppel, the plaintiffs in *Eubanks*: (1) unsuccessfully moved to allow the trustee to be substituted for plaintiffs in the lender liability action after the trustee initially refused

### ii.    Lewis: *Circumstances in which the application of judicial estoppel was appropriate*

We have also recently considered a case where the plaintiff did not make numerous attempts to correct her prior omission of a lawsuit from her bankruptcy proceedings and where the application of juridical estoppel was found to be appropriate. In *Lewis*, the court considered whether the plaintiff's actions were the result of inadvertence or a good-faith mistake. 141 F. App'x at 425. The court in *Lewis* considered *Eubanks* but noted that, "Lewis's actions in the present case pale in comparison to the actions taken by the plaintiffs in *Eubanks*." *Id.* at 427. The court found: (1) that none of Lewis's evidence suggested that her claim was "revealed to the bankruptcy court or to the trustee before approval of the bankruptcy plan"; (2) that she "never sought to amend her bankruptcy schedules, nor did she file a motion or make any other sort of attempt to inform the bankruptcy court of her discrimination action"; and (3) that "her only relevant contact with the [bankruptcy] trustee was a conversation with a woman named 'Phyllis' whom Lewis alleges worked for the Trustee" but that "Lewis's description of that conversation . . . does not indicate that the conversation took place before Weyerhaeuser raised the issue of judicial estoppel" and that it does not "establish that Phyllis was aware that the cause of action had been omitted from the bankruptcy petition." *Id.* The Court in *Lewis* found that these "minimal alleged effort[s]" did not serve "to establish that her omissions were inadvertent under *Eubanks*." *Id.*

In finding that "Lewis acted intentionally and in bad faith," the court also noted that: (1) "Lewis began the process of filing her discrimination claim with the EEOC only one month after the bankruptcy plan was approved, which tends to show that she waited until the plan was approved before pursuing her discrimination action" and (2) while "a non-attorney may not know the exact nature of '[o]ther contingent and unliquidated claims of every nature'" it was hard to believe that Lewis did not understand the language requiring her to disclose "the gross amount of income the debtor has received

to abandon the claim in the bankruptcy proceeding (evidentially, the trustee initially took actions to pursue the claim and then abandoned it); and (2) filed an amendment to their original bankruptcy petition to add the lender-liability claim to their bankruptcy schedule B. *See id.* at 896-97.

from employment" and, consequently, hard to believe that she had unintentionally omitted altogether her prior employment with Weyerhaeuser.  141 F. App'x at 427.

### 3.  *Application of Judicial Estoppel to White's Harassment Claim*

In short, to support a finding of judicial estoppel, we must find that:  (1) White assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) White's omission did not result from mistake or inadvertence.  In determining whether White's conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith.  In determining whether there was an absence of bad faith, we will look, in particular, at White's "attempts" to advise the bankruptcy court of her omitted claim.[4]  The contrasting facts in *Eubanks* and *Lewis* illuminate this inquiry.

#### i.  *Initial inquiries under the test for judicial estoppel*

The Defendants have come forward with evidence that shows that: (1) White assumed a position that was contrary to one that she asserted under oath in the bankruptcy proceeding and (2) the bankruptcy court adopted the contrary position as a preliminary matter.  When White filed her harassment claim, she asserted a position before the district court that was contrary (and continued to be contrary) to the position that she asserted before the bankruptcy court.  White omitted from her initial filings (which she signed and swore were accurate under penalty of perjury) before the

---

**4**White omitted the initial bankruptcy claim from the filings and, as discussed below, as a debtor, she had a motive to not disclose the harassment claim.  While Defendants are seeking summary judgment, they have provided evidence showing White's omission, that it resulted in the bankruptcy court adopting her position (that there was no harassment claim, which was contrary to her later assertion of her harassment claim), her knowledge of the harassment claim, and her motive for concealment.  Since Defendant's have come forward with this evidence, White must now point out evidence that shows an absence of bad faith (in particular, through her attempts to correct her initial omission) and that her omission resulted from inadvertence or mistake and was not intentional.  Indeed, "[t]o survive summary judgment, the plaintiff must present affirmative evidence sufficient to show a genuine issue for trial." *Anderson*, 477 U.S. at 249 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

bankruptcy court on August 8, 2008 any mention of her harassment claim, despite the fact that those requirements specifically required her to list the harassment claim. *See* 11 U.S.C. §§ 521(a)(1), 541(a)(7) (describing the debtor's affirmative duty to disclose all of her assets to the bankruptcy court). This omission, which essentially stated that the harassment claim did not exist, was contrary to White's later assertion of the harassment claim before the district court. It also conflicted with the fact that White had requested and received a Notice of Right to Sue from the EEOC (and hired an attorney), and with her earlier filing of complaints with the EEOC and the Tennessee Human Rights Commission.[5]

Furthermore, on August 12, 2008, the bankruptcy court entered an order requiring White to make payments to the trustee and directing her to attend a meeting of the creditors. At this point, the bankruptcy court adopted her position: "[W]hen a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Lewis*, 141 F. App'x at 425 (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988)).[6]

The Defendants have also provided evidence that shows that (1) White had knowledge of the factual basis of the undisclosed harassment claim, since she had

---

[5]"It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Costal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999) ("The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action."). White did not even (partially) amend her initial bankruptcy filings, which she made on August 8, 2009, until November 11, 2008. She filed her harassment claim on October 3, 2008. Therefore, the filing of her harassment claim was contrary to the position she had asserted on August 8, 2008 in her bankruptcy filings. Furthermore, White had filed a complaint related to her harassment claim nearly two years before she filed for bankruptcy. The EEOC terminated its processing of her harassment claim and issued a Notice of Right to Sue (at White's request) on July 8, 2009, a month before White filed her bankruptcy petition. (*See* R. 10, Exs. 1-3.)

[6]White's attorney filed an affidavit that stated that: "When I appeared in Court on Ms. White's bankruptcy, this lawsuit was discussed, as well as, any potential claims thereof." (R. 12, Ex. A, pp. 1-2.) It does not appear, and White has not presented any evidence that, there was any contact between the attorney and the bankruptcy court (or other communication of White's harassment claim) until after the bankruptcy court entered its order on August 12, 2008. Therefore, White's initial position, which did not disclose the harassment claim, was accepted by the bankruptcy court.

already filed a complaint before the EEOC.  Indeed, she provided an affidavit from her bankruptcy attorney stating that "Betsy White did inform me of her [harassment claim] when I met with her."  (R. 11, Ex. A.)  Furthermore, Defendants have provided evidence showing that (2) White had a motive for concealment: if the harassment claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying White's creditors, rather than simply to paying White.  *See Lewis*, 141 F. App'x at 426 ("It is always in a Chapter 13 petitioner's interest to minimize income and assets.").

### ii. The absence of bad faith and White's attempts to correct her initial omission

After considering the evidence presented by the Defendants, the more difficult question is whether White can point to evidence showing an absence of bad faith.  Based on *Eubanks*, she can do this by showing her attempts to correct her initial omission. Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important.[7]  Furthermore, since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship, the timing of White's effort is also significant.  Consequently, efforts to correct an omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss.

White has provided evidence that she made several attempts to correct the omission of the harassment claim before the bankruptcy court.  Viewing the evidence in the light most favorable to White, two of these efforts – (1) Crawford's affidavit and (2) the Application to Employ Counsel – came before the Defendants filed their motion

---

[7]White's omission of the harassment claim from her initial bankruptcy filings is significant and must be viewed against the backdrop of bankruptcy law:

> "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. D. Mich. 2003); *In re Coastal Plains, Inc.*, 179 F.3d at 208 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988)) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.").

*Lewis*, 141 F. App'x at 424.  Only adequate disclosure would give the bankruptcy court, the bankruptcy trustee, and White's creditors adequate time and information to respond to her harassment claim.

to dismiss. A third effort – (3) the amendment to White's "Statement of Financial Affairs" – came after the motion to dismiss.   These limited and ineffective attempts to correct her initial misfiling distinguish this case from *Eubanks* and make the application of judicial estoppel appropriate.

### a. Crawford's affidavit

First, her bankruptcy attorney, Steven Crawford, filed an affidavit stating  that: "When I appeared in Court on Ms. White's bankruptcy, this lawsuit was discussed, as well as, any potential claims thereof." (R. 12, Ex. A, pp. 1-2.)[8]  The affidavit is signed on November 17, 2008 and it does not state when the appearance took place.  However, the docket sheet filed by Defendants states that the only "appearance" took place on October 1, 2008 and that Seven Crawford (White's attorney) and the bankruptcy trustee appeared.  (R. 12, Ex. 1, p.3; *see also* Appellee's Br. pp. 37-38 (Appellees also seem to concede this).)  Viewing the evidence in the light most favorable to White, her attorney discussed (to some degree) the harassment claim when he appeared in court on October 1, 2008, which represents an attempt to correct the initial omission.

However, in the affidavit, White has provided no evidence as to what, exactly, was discussed, whom it was discussed with, or whether the omission from the initial filings was discussed or emphasized.  Indeed, there is no evidence that the timing of the harassment claim (whether it arose before or after White's bankruptcy filings) was discussed.  Moreover, the Defendants provided what they claim is the only official transcript of this appearance before the bankruptcy court (on October 1, 2008), and this transcript does not show any discussion of the harassment claim.  There is no evidence that either the bankruptcy court or the trustee asked for any additional information, and White did not update her filings until after Defendants filed their motion to dismiss.  Furthermore, there is no evidence that White's creditors were made aware of the harassment claim.  Taken together, this evidence does not show that White effectively or adequately disclosed the harassment claim, which was allegedly worth $1.25 million.

---

[8]White did not provide any affidavit or explanation for her actions.

This evidence does not show an absence of bad faith or that White's omission resulted from mistake or inadvertence.

### b. Application to Employ Counsel

Second, on October 3, 2008, White filed an "Application to Employ Counsel" with the bankruptcy court for the harassment claim. This filing did provide some notice to the bankruptcy court that White had a harassment claim. However, her application did not identify whether she was the plaintiff or the defendant in the lawsuit (although the fact that her lawyer was representing her on a contingency fee suggests that she was the plaintiff), the amount of the lawsuit, the facts giving rise to the lawsuit, or even when the actions giving rise to the lawsuit took place. It also did not indicate that the harassment claim had been omitted from her initial filings and it did not appear to trigger any request for additional information from the bankruptcy court or the trustee. Furthermore, it did not cause White to update her inaccurate filing statements.[9] Consequently, the application did not adequately inform the court, the trustee, or White's creditors of the initial omission and it does not show an absence of bad faith or that White's omission resulted from mistake or inadvertence.

### c. Amendment to White's "Statement of Financial Affairs"

Third, after the Defendants filed their motion to dismiss, White partially amended her "Statement of Financial Affairs" to reflect her harassment claim under the category of "Suits and administrative proceedings, execution, garnishments and attachments." (R. 11, Ex. B (not disclosing the amount of the suit or whether White was the plaintiff or the defendant).)

We will not consider favorably the fact that White updated her initial filings after the motion to dismiss was filed. To do so would encourage gamesmanship, since White only fixed her filings after the opposing party pointed out that those filings were

---

[9]In contrast, when White filed a compliant on October 20, 2008 with the bankruptcy court, noting that a creditor had potentially violated the automatic stay provisions, she provided specific information to the bankruptcy court concerning the facts giving rise to the complaint, when those facts took place, and the relief that she was seeking. (R. 10, Ex. 11 (not mentioning the harassment claim).)

inaccurate. *See Barger*, 348 F.3d at 1297 ("Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.") (citation omitted).[10] Furthermore, she did not adequately fix those filings but, instead, only updated a part of them (so that they still did not reflect the estimated value of the lawsuit).

### d. Other factors

Several other factors further undermine the sufficiency of White's attempts to advise the bankruptcy court of her harassment claim and undermine any evidence indicating the absence of "motive or intention" to conceal the harassment claim. In particular, her initial bankruptcy filings, which listed a claim in one of the sections, should have included the harassment claim in that same section. The inclusion of the other suit indicates that White (who signed the bankruptcy filings) was aware of this section of the bankruptcy filings, and of the requirement that she list her claims, including her harassment claim, in it. (R. 10, Ex. 5, p. 8 (listing a Civil Summons for "Ft

---

[10]The dissent argues that we should – effectively – put White in the position she would have been in had she properly disclosed her harassment claim in her initial bankruptcy filings. Thus, the harassment claim should proceed and any proceeds from the harassment claim would go into the bankruptcy estate: they would go first to White's creditors and then, if any amount was left over, to White. This would, effectively, allow White to avoid the consequences of failing to disclose her harassment claim. We do not believe that this is the proper course of action in this case and that this "so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." *Barger*, 348 F.3d at 1297 (citation omitted). Furthermore, we note that this court has previously applied judicial estoppel in similar circumstances, even though the result prevented recovery by bankruptcy creditors. *See generally Lewis*, 141 F. App'x at 420-27 (noting that Lewis filed an affidavit (on February 13, 2004) with the district court, stating that she discussed with an employee of the Chapter 13 bankruptcy trustee, whose office received her ongoing payments, "what [she] should do with any proceeds of this [discrimination] lawsuit," and that this employee informed her that, if her discrimination claim was successful, "some of the proceeds of the [discrimination] lawsuit would have to be paid into the bankruptcy plan" to which Lewis observed that "[t]hat is exactly what I intend to do"). Similarly, the fact that the final plan confirmation order appears to have contained an amended modification stating that "[a]ny and all proceeds from debtor's pending sexual harassment lawsuit," does not change our determination. This language, like White's amendment to her "Statement of Financial Affairs," only came after Defendants filed their motion to dismiss based on judicial estoppel. Furthermore, this language still did not disclose the amount of White's harassment claim.

We also disagree with the dissent's characterization of our opinion. *See generally* Dissenting Op. at 17, 19-20, 23 ("The majority's approach . . . fails to appreciate the absurdity of the result of its erroneous application of judicial estoppel . . . the majority instead applies it recklessly . . . the majority engages in speculation and conjecture . . . [t]he majority's approach constitutes a perversion of justice . . . ."). Instead, in the circumstances of this case, we analyzed our earlier opinions applying judicial estoppel, White's actions, and whether she presented affirmative, significantly probative evidence sufficient to show a genuine issue for trial. After careful consideration, we found that she did not and, therefore, we affirmed the district court's decision.

Sanders Sevier Med Ctr v. Betsy White")). In addition, White waited until just after the plan confirmation hearing to file her harassment claim with the district court.[11]

In short, the limited and ineffective nature of White's "attempts" to correct her initial omission clearly distinguish this case from *Eubanks*, where the defendant made numerous, effective attempts to correct the initial omission before (and after) the defendant in that case filed a motion to dismiss based on a claim of judicial estoppel. Furthermore, White's attempts to correct the initial omission do not show an absence of bad faith or that White's omission resulted from mistake or inadvertence. Instead, the limited evidence that White provides, the limited nature of her attempts to correct the initial omission, the strong financial motivation she had to conceal the claim, and her inadequate response even after the motion to dismiss was filed, all show that she had motive and intention to conceal the claim.

### 4. *White's attorney's affidavit does not excuse her initial omission*

We also find that White's argument, based on her bankruptcy attorney's affidavit, implying that she discussed her harassment claim with her attorney, but that her attorney failed to include it in the filings, and that her attorney's mistake should excuse her omission of her harassment claim, is unpersuasive.[12] *Lewis* examined a similar issue and found that Lewis's "assertion that she relied in good faith on the advice of her attorney's paralegal" was also "unpersuasive." 141 F. App'x at 427. Lewis claimed that she had

---

[11]The district court also questioned, "the timing of events in this case," noting that:

> Though Mr. Shipwash represented Plaintiff White [in the harassment claim] as early as May 27, 2008, when he requested the Notice of Right to Sue on her behalf, the Bankruptcy Court application to employ him was filed only after the meeting with creditors and objections to confirmation hearing [on October 1, 2008]. The timing of events in this matter raises questions as to why Plaintiff White's discrimination claims were not included on her original bankruptcy petition or at least timely amended after the filing of the present lawsuit, all of which further weaken her contention of inadvertence or mistake in this matter.

(R. 20 p. 14.) It appears that the EEOC's Notice of a Right to Sue, which was issued on July 8, 2008, gave White 90 days to file a lawsuit against Defendants (however, the box specifically giving 90 days is not checked). (R. 10, Ex. 4.) White filed her harassment claim on October 2, 2008, just a few days before the 90 day period for filing that claim expired and just one day after her plan confirmation hearing.

[12]Since White hired her attorney as her freely selected agent, the burden of showing, with significantly probative evidence, that her attorney's conduct should excuse her mistaken filing is hers. *Anderson*, 477 U.S. at 249.

told a paralegal with her attorney's law firm that she had a potential discrimination claim, but that the paralegal or Lewis's attorney made a "conscious decision" to not present that information to the bankruptcy court "in contravention of the clear terms of the bankruptcy petition." *Id.* In rejecting Lewis's arguments, the court in *Lewis* cited to a case from the Eleventh Circuit, which noted that even though the "[debtor's] attorney failed to list [the debtor's] discrimination suit on the schedule of assets despite the fact that [the debtor] specifically told him about the suit," that this "attorney's omission [was] no panacea." *Id.* (quoting *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289, 1295 (11th Cir. 2003) and citing to *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)).[13] The court found no reason to deviate "from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys," and, therefore, that Lewis's attorney's omission did not excuse her omission. *Id.*

In this case, the affidavit from White's bankruptcy attorney does indicate that White informed her lawyer of her harassment claim when he met her and that she did not attempt to conceal the information. However, her lawyer was "unsure" why the information was not included, and there are a number of explanations (*e.g.*, his mistake, her mistake, a conscious decision). Furthermore, White has not provided any affidavit (or other information) clarifying her understanding of the situation or explaining what she discussed with her lawyer, or why the lawsuit was not included in her initial bankruptcy filings. Therefore, based on the limited evidence that White has provided

---

[13]*Lewis* discussed *Link* in the context of judicial estoppel. In approving the district court's sua sponte dismissal of a case after plaintiff's counsel missed a pretrial conference, *Link* stated that:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

370 U.S. at 633-36. However, we have been reluctant to "uphold the dismissal of a case merely to discipline an attorney." *Coleman v. American Red Cross*, 23 F.3d 1091, 1094-95 (6th Cir. 1994) (numerous citations omitted) (noting, in the context of dismissal for violation of a protective order, that "dismissal of an action for an attorney's failure to comply is a harsh sanction which the court should order only in extreme situations showing 'a clear record of delay or contumacious conduct by the *plaintiff*' . . . '[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney'" (citation omitted; emphasis in original).).

and pointed to, it is unclear whether White or her attorney is responsible for the omission.

In any event, the mistake does not lie solely with White's attorney. In addition to choosing her attorney, White signed the bankruptcy petition that omitted the filing. By signing, she swore, under penalty of perjury, that the filing was accurate. The initial bankruptcy petition contained one proceeding in it already, which was listed in the section where the harassment claim should have been listed. (R. 10, Ex. 5, p. 8.) The fact that one proceeding was listed should have further informed White that other claims (like the harassment claim) needed to be listed, especially given the apparent importance (both financially and personally) of the harassment claim. Consequently, we will not deviate "from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys," and, therefore, find that the ambiguous statements in the affidavit from White's bankruptcy attorney (which is the only evidence on this matter that she points to) do not excuse her omission. *Id.*

## III. CONCLUSION

White asserted a position before the bankruptcy court that was contrary to the position that she asserted before the district court and the bankruptcy court accepted her position. She had a motive to conceal and knowledge of the factual basis of her harassment claim. Furthermore, the evidence White has presented of her attempts to advise the bankruptcy court and the trustee of her harassment claim does not excuse her initial omission. Therefore, we **AFFIRM** the decision of the district court.

—————————

**DISSENT**

—————————

CLAY, Circuit Judge, dissenting. The majority's approach to this case fails to appreciate the absurdity of the result of its erroneous application of judicial estoppel. Plaintiff has brought suit based on serious sexual harassment charges, including improper sexual contact at work. In a normal situation, if Plaintiff could prove the allegations, she would personally be entitled to damages. The fact that Plaintiff was in bankruptcy proceedings changes the normal course of events. But because the claim arose before she filed for bankruptcy, her creditors should be entitled to any proceeds that could be used to repay Plaintiff's debts. Therefore, our law permits damages to be awarded to the bankruptcy estate in order to insure Plaintiff's creditors receive their fair share.

It is undisputed that Plaintiff failed to disclose her claim against Wyndham Vacation Ownership ("Wyndham") in her initial bankruptcy filings. However, she has come forward with sufficient evidence to allow a reasonable factfinder to find that she notified the trustee and the bankruptcy court of her claim before it was filed. The majority believes that because of Plaintiff's failure to make the appropriate disclosure in connection with the initial bankruptcy filing, neither she nor her creditors should be entitled to any recovery. Instead, the majority finds that Wyndham, the employer who allegedly employed someone who repeatedly sexually harassed Plaintiff, should be excused from paying any damages to any party whatsoever.

"Judicial estoppel is an equitable doctrine to be invoked by this court at its discretion." *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). In applying an equitable doctrine, we need to weigh the benefits involved and the degree of fault of the parties. The only fault attributed to Plaintiff in the instant case is the contested issue of whether she concealed her sexual harassment claim from the bankruptcy court. Plaintiff's creditors, who would have had a right to recover from any judgment in favor

of Plaintiff, are blameless in this dispute. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (acknowledging that judicial estoppel "is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit"). Meanwhile, Defendant stands accused of allowing sexual harassment in the workplace and would suffer no "unfair detriment" from Plaintiff's alleged inconsistent positions, since it had no stake in the bankruptcy proceedings. *See New Hampshire*, 532 U.S. at 751.

The majority ignores the fact that Defendant suffered no prejudice from Plaintiff's initial failure to disclose her claim and improperly applies in a formulaic manner the two-part test for judicial estoppel articulated in *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002). That test ignores a third consideration that the Supreme Court has found relevant, namely "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751.[1] Additionally, the Supreme Court has emphasized that it did not "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.*

The majority's position is to absolve of all liability a defendant who has not been injured in any way by Plaintiff's actions – even though it is factually disputed whether Plaintiff failed to notify the bankruptcy court of her sexual harassment suit and even though her creditors are accused of no wrongdoing. The equitable nature of judicial estoppel means that there is no bar to Plaintiff's claim unless the Court determines that barring the suit is the most equitable outcome. The proper outcome is not foretold by applying some sort of litmus test but is determined in the sound discretion of the Court. We have often remarked that judicial estoppel "should be applied with caution to 'avoid impinging on the truth-seeking function of the court.'" *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB*,

---

[1]*Browning* did not create some sort of separate test to be applied in the bankruptcy setting. For support of its two-part test, it cites to *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990), a review of a National Labor Relations Board order that had nothing to do with bankruptcy.

911 F.2d 1214, 1218 (6th Cir. 1990)).  The majority in this case recklessly applies judicial estoppel, barring a suit to the detriment of Plaintiff and her creditors even though Plaintiff has come forward with evidence that she informed the bankruptcy court of her sexual harassment claim.  The evidence presented by Plaintiff creates clear factual disputes which make this case inappropriate for the application of judicial estoppel at the summary judgment stage.

Judicial estoppel reasonably precludes suits in cases where a plaintiff has failed to disclose a potential suit to the bankruptcy court because otherwise, potential plaintiffs would be able to reap a windfall by retaining monetary awards that properly should be made available to their creditors.  Judicial estoppel may be appropriate in a case where a plaintiff has made no legitimate attempt to inform the bankruptcy court or the bankruptcy estate of his or her potential claims.  *See Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 427 (6th Cir. July 6, 2005) (finding that apart from a phone call to the trustee's office on an undisclosed date, the plaintiff did not "make any other sort of attempt to inform the bankruptcy court of her discrimination action").[2]  However, if a plaintiff has attempted to inform both the bankruptcy court and the trustee in a meaningful way of a potential suit even before it is filed, then it is hardly equitable to absolve the defendant of liability.  Courts should endeavor to insure that a plaintiff's creditors, if possible, have a real chance to recover any damages owed by a defendant.  *See Eubanks*, 385 F.3d at 898 n.1 (acknowledging that "various courts in other jurisdictions have held that a trustee's knowledge of the claim precludes the application of judicial estoppel since the plaintiff was obviously not trying to defraud the court if they placed the trustee on notice").

---

[2]The majority's characterization of *Lewis* as representing "similar circumstances" to those presented in this case is belied by a look at the factual record of each case.  In *Lewis*, we cited with approval the district court's opinion that noted that none of Lewis' evidence suggested that her claims "were revealed to the bankruptcy court or to the trustee before approval of the bankruptcy plan."  141 F. App'x at 427.  We emphasized the plaintiff's "failure to notify the bankruptcy court" and specifically noted that the plaintiff never established that her contact with an alleged employee of the trustee took place before the issue of judicial estoppel was raised.  In this case, meanwhile, we have a signed affidavit from Plaintiff's lawyer swearing that he informed both the bankruptcy court and the trustee of Plaintiff's sexual harassment suit.  Furthermore, the lawyer filed documents available to any party in the bankruptcy proceedings requesting an attorney on a contingency fee basis for a sexual harassment suit.  Both of these actions took place before Plaintiff had even filed her sexual harassment suit and before Defendant raised a defense of judicial estoppel.

The majority ignores the lesson of *Eubanks* by focusing on whether the omission in Plaintiff's initial bankruptcy filing is attributable "to nothing more than mistake or inadvertence." *Browning*, 283 F.3d at 776. In *Lewis*, we found that in light of *Eubanks*, an "argument that judicial estoppel must apply where a debtor cannot establish 'mistake or inadvertence' under *Browning* is unpersuasive." 141 F. App'x at 427. In *Lewis*, we acknowledged that *Eubanks* teaches that "even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional." *Id*. at 426.

The majority imports a "bad faith" requirement from *Eubanks*, but it still applies judicial estoppel in too rigid a fashion. Furthermore, in rushing to foreclose a judicial remedy to Plaintiff and her creditors, the majority engages in speculation and conjecture about Plaintiff's motivations in order to find that she was acting in bad faith rather than find that the exclusion of her sexual harassment suit was negligent or inadvertent. Even though this matter is before the Court on summary judgment, under which standard Plaintiff should be afforded the benefit of the doubt, the majority inexplicably resolves all disputed issues of material fact in favor of Defendant. The majority places the entire burden on Plaintiff to show an absence of bad faith and places little or no burden on Defendant to show the existence of bad faith. In skewing the appropriate standard to the detriment of Plaintiff, the majority also loses sight of the crucial fact in *Eubanks* that "[t]here is record evidence . . . that Plaintiffs made the court, and the Trustee, aware of the potential civil claim against Defendant before the bankruptcy action closed, although the claim was omitted from Plaintiffs' bankruptcy schedule form." 385 F.3d at 898. Similar evidence is assuredly present in this case, particularly if, unlike the majority, we apply the proper summary judgment standard.

Plaintiff presents two facts to support her contention that she notified the bankruptcy court and the trustee of her sexual harassment claim. First, she provides her bankruptcy attorney's signed, sworn statement to the effect that "When I appeared in

Court on Ms. White's bankruptcy, this lawsuit was discussed, as well as, any potential claims thereof." Notwithstanding the majority's contention that Plaintiff's attorney's affidavit lacked sufficient specificity, the affidavit clearly states that the lawsuit and potential claims were discussed in the bankruptcy court. Second, Plaintiff notes that on October 3, 2008, she filed an "Application to Employ Counsel" with the bankruptcy court. Viewing the evidence in the light most favorable to the Plaintiff, as we must at this stage of the proceedings, her counsel informed the bankruptcy court and the trustee of the sexual harassment suit directly in court and indirectly through the Application to Employ Counsel. Those facts strongly suggest that she did not attempt to conceal the sexual harassment claim.

The time-line on this case is crucial. Plaintiff filed her bankruptcy petition on August 8, 2008, and the court ordered White to make payments to the trustee on August 12, 2008. The plan confirmation hearing was scheduled for October 1, 2008. At that hearing, the first in-court hearing in the bankruptcy proceedings, Plaintiff's bankruptcy attorney notified the court about the sexual harassment claim. Plaintiff filed her sexual harassment lawsuit after this hearing – where her attorney notified the trustee and the bankruptcy court of her claim.[3]

The majority refuses to admit it, but it is apparent that it does not believe Plaintiff's bankruptcy attorney. However, when an officer of the court swears that the lawsuit was discussed in front of the bankruptcy judge and the trustee, a reasonable factfinder could certainly believe that such a conversation occurred. *See, e.g., United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994) (holding that when an attorney, who is an officer of the court, testifies, "absent some indication of misconduct, the court

---

[3]The district court and the majority infer bad motive from the filing of the sexual harassment complaint after the plan confirmation hearing. Plaintiff had received her right-to-sue letter in July 2008, but did not file suit until after the plan confirmation hearing on October 1, 2008. Construing the facts most favorably for Plaintiff, however, the attorney told the bankruptcy court and the trustee about the case at the plan confirmation hearing. *See Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (noting that at the summary judgment stage, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party"). The proper inference to make on Plaintiff's behalf is that the filing of the claim was the result of the fact that the statute of limitations was about to run. The right-to-sue letter was received on July 8, 2008, meaning the 90-day period would run less than a week after the sexual harassment suit was filed. Plaintiff would hardly be the first litigant to wait until the statute of limitations was about to run to file her lawsuit.

is entitled to accept his representations on the issue"). The majority ignores a core tenet of summary judgment jurisprudence by failing to make all inferences in favor of Plaintiff as the non-moving party. The majority inexplicably attributes the lack of record evidence that the trustee responded with requests for additional information as proof that the Plaintiff's bankruptcy attorney failed to inform the court of Plaintiff's suit. Not only is it troubling that an absence of evidence could, in the mind of the majority, trump the sworn statement of an officer of the court, but the majority also ignores the possibility that the trustee was not overly concerned about the suit because the potential proceeds were too speculative to worry about in what was a relatively small bankruptcy proceeding. The bankruptcy estate had allowed claims of less than $17,000, and no individual creditor had a claim of more than $4,000.

If Plaintiff's bankruptcy attorney's sworn statement was insufficient to show that Plaintiff was not attempting to conceal her suit, two days later, Plaintiff filed an application to employ counsel on a contingency basis. The majority contends that Plaintiff failed to state in the application whether she was plaintiff or defendant in the lawsuit, but that motion was accompanied by an affidavit from her sexual harassment attorney which stated: "I do not hold nor represent an interest adverse to the Debtor Betsy Ann White's sexual harassment lawsuit; I am eligible to serve as counsel to the Debtor, Betsy Ann White in her sexual harassment lawsuit." If Plaintiff were attempting to hide her sexual harassment lawsuit from her creditors, then it was assuredly a bizarre decision to notify them of her wish to employ counsel seeking to represent her in that lawsuit.

Plaintiff's position that a proper resolution of the case would allow Plaintiff an opportunity to prove her case is bolstered by the fact that Plaintiff's actual plan confirmation order, issued on January 14, 2009, called for "Any and all net proceeds from debtor(s) pending sexual harassment lawsuit claim to be paid into the plan as additional plan payments, except for Court approved legal fees and expenses." Thus, the bankruptcy court reached the appropriate result. If Plaintiff could prove she was sexually harassed, Defendant should pay damages, and Plaintiff's creditors should

receive the money owed to them. Obviously, notification to creditors made after a defendant's motion to dismiss may require a different result to avoid providing incentives for debtors to hide potential claims until those claims are discovered by an opposing party. However, the record in this case amply supports a determination that a reasonable jury could find that Plaintiff made the trustee and the bankruptcy court aware of the sexual harassment claim before it was even filed, and certainly before Defendant's motion to dismiss in this action.

The majority therefore attempts to punish Plaintiff for failing to properly disclose her sexual harassment suit, even though a factfinder could easily determine that she informed both the trustee and the bankruptcy court of the suit before the possibility of judicial estoppel was ever raised. Furthermore, the majority simply never comes to terms with the fact that the real victim of such unorthodox and aggressive use of judicial estoppel is not the debtor but the bankruptcy estate, and by extension the debtor's creditors. Quite simply, if the debtor was not intentionally hiding her suit and in fact disclosed it to both the bankruptcy judge and the trustee, it is hardly equitable to deprive the bankruptcy estate of the right to its share of any recovery. On the other hand, the outcome proposed by Plaintiff is amply supported by our precedents and rulings in other cases that decline to apply judicial estoppel when subsequent conduct indicates that the initial omission was inadvertent or not done in bad faith. *See, e.g., Eubanks*, 385 F.3d at 899; *Browning*, 283 F.3d at 776 (holding that "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence"); *Matthews v. Potter*, 316 F. App'x 518, 522 (7th Cir. 2009) (finding judicial estoppel inapplicable where plaintiff "did not conceal her administrative complaints during the bankruptcy proceedings").

The majority's approach constitutes a perversion of justice because, under its approach, even if Plaintiff could prevail in her sexual harassment lawsuit, neither she *nor her creditors* could receive any damages. Contrary to both our case law and basic notions of justice, the majority has decided that Defendant, who allegedly employed someone who repeatedly sexually harassed Plaintiff, should pay no damages and suffer

no consequence for its egregious behavior under any circumstances – even if Plaintiff could demonstrate to a trier of fact that she did not deliberately conceal her sexual harassment claim.

I therefore respectfully dissent.