NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0279n.06

**No. 12-3584**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 20, 2013*
DEBORAH S. HUNT, Clerk

RACHELLE KIMBERLIN,                            )
                                               )
    Plaintiff-Appellant,             )
                                               )
v.                                             ) ON APPEAL FROM THE UNITED
                                               ) STATES DISTRICT COURT FOR THE
DOLLAR GENERAL CORPORATION,                    ) SOUTHERN DISTRICT OF OHIO
                                               )
    Defendant-Appellee.              )

Before:  GUY, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge.  Rachelle Kimberlin appeals the dismissal of her Ohio "public policy tort" claim alleging retaliation for reporting that her Dollar General supervisor assaulted her.  She argues that the district court erred in barring her suit on judicial estoppel grounds.  Because Kimberlin failed to disclose the potential claim in her bankruptcy filings and she had a motive to conceal the retaliation claim, we AFFIRM.

I.

Kimberlin worked for nine years as a repack order filler in a Dollar General distribution center until her termination on June 9, 2010.  Dollar General attributes Kimberlin's termination to her failure to reach production-related targets.  Kimberlin surmises that Dollar General terminated

her because nine months earlier, she and her husband reported to the company's corporate office that supervisor Darryl Strouse "berate[d]" her and "thr[e]w a stack of 'totes'" at her while she stood in a mesh-enclosed area. Kimberlin maintains that after reporting the incident, she was "singled out" for "adverse and discriminatory" treatment, including a "humiliating" level of supervision and observation. Afterward, she was also "disciplined at least five times, including for failures to reach her production targets."

Some five years before her termination, Kimberlin and her husband filed a voluntary petition for Chapter 13 bankruptcy. As part of the petition, they submitted a Statement of Financial Affairs, which required the listing of all "suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." The Kimberlins also submitted a schedule of personal property, which required identifying "contingent and unliquidated claims of every nature" and estimating values for each claim. In July 2005, the bankruptcy court confirmed the Kimberlins' Chapter 13 plan, which required monthly payments of $225 for up to five years, and would pay secured creditors in full and unsecured creditors less than 3% of the amount owed. On July 20, 2010, the Kimberlins made their final plan payment. The bankruptcy court discharged the case on September 7, 2010 and closed it on November 24, 2010. Although Kimberlin was terminated during the repayment period, she never amended her schedules or filings to reflect a potential suit against Dollar General.

No. 12-3584
*Kimberlin v. Dollar Gen. Corp.*

Nearly a year after the bankruptcy case closed, Kimberlin filed the instant action in state court. Dollar General removed the case and moved for judgment on the pleadings. The district court granted Dollar General's motion after applying judicial estoppel to bar this action. In a footnote, the court also held that Section 4113.52 of the Ohio Revised Code preempted Kimberlin's "claims for violation of public policy regarding workplace safety" and that Kimberlin could not maintain a Section 4113.52 action because she filed her complaint outside the 180-day statute of limitations and failed to allege that she provided a written report to her employer.

## II.

We review de novo a judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "constru[ing] the complaint in the light most favorable to the plaintiff, accept[ing] all of the complaint's factual allegations as true, and determin[ing] whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). We also give fresh review to the district court's judicial estoppel finding. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010).[1]

---

[1] In *Lewis v. Weyerhaeuser*, 141 F. App'x 420, 423–24 (6th Cir. 2005), we questioned the continuing viability of our de novo standard for judicial estoppel, noting the Supreme Court's characterization of the doctrine as an equitable remedy "invoked by the court at its discretion," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation omitted), and recognizing that the "majority of federal courts" review for abuse of discretion. Yet, because the district court's decision survived under either standard, we declined to resolve the matter. *Lewis*, 141 F. App'x at 424. The district court's decision in this case likewise withstands de novo review. Thus, we have no need to revisit

III.

A footnote in Dollar General's brief suggests that Kimberlin lacks standing. Normally, a passing reference in a footnote is insufficient to preserve an argument on appeal. To the extent Article III standing is in question, however, we must consider whether we have subject matter jurisdiction. We do. Kimberlin's garden-variety employment claim satisfies the minimum constitutional requirements of a concrete injury (she was fired), causation (by Dollar General), and redress (money damages). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The standing problem here—whether a debtor or only a bankruptcy trustee has the right to prosecute legal claims related to the bankruptcy estate—is better characterized as a real-party-in-interest question governed by Rule 17. *See Auday v. Wet Seal Retail*, 698 F.3d 902 (6th Cir. 2012); *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003). But given that Rule 17 contains a built-in forfeiture clause, *see United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996), Dollar General has done itself no favors by failing to develop this issue on appeal.

To countenance Dollar General's two-sentence footnote as properly raising a standing argument would require this panel to resolve several thorny issues of bankruptcy law, including an apparent conflict between two code provisions, 11 U.S.C. §§ 1306 and 1327. That conflict has led courts down four different paths (each with its own set of difficulties) for allocating property

the issue now.

between the debtor and the trustee. *See In re Jones*, 657 F.3d 921, 927–28 (9th Cir. 2011); *In re Waldron*, 536 F.3d 1239, 1242–43 (11th Cir. 2008); *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997); *Sec. Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 690 (8th Cir. 1993); *In re Petruccelli*, 113 B.R. 5, 15 (Bankr. S.D. Cal. 1990); David Gray Carlson, *The Chapter 13 Estate and Its Discontents*, 17 Am. Bankr. Inst. L. Rev. 233 (2009). We decline to resolve, without briefing, these difficult bankruptcy issues. The better approach, we think, is to bypass the Rule 17 aspect and resolve the judicial-estoppel issue on the parties' shared assumption that Kimberlin was obliged to disclose her employment claim to the bankruptcy court.

IV.

The equitable doctrine of judicial estoppel bars Kimberlin's action. Judicial estoppel seeks "to preserve 'the integrity of the courts,'" *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (citation omitted), by "generally prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). Though there are no "inflexible prerequisites" for judicial estoppel, *id.* at 751, we have applied the doctrine to bar employment related claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence. *See White*, 617 F.3d at 478. Applying judicial estoppel under

these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests. *See id.* at 479 & n.5; *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002); *In re Coastal Plains, Inc.*, 179 F.3d at 207–08; *see also* 11 U.S.C. §§ 521(a)(1), 541(a)(7).

On appeal, Kimberlin challenges only the mistake-or-inadvertence prong. On this point, we consider whether "(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *White*, 617 F.3d at 478. Kimberlin disputes motive and bad faith, arguing that insufficient time remained in the payment plan for the bankruptcy estate or her creditors to benefit from her disclosure. She emphasizes that 60 months is the maximum repayment period for a Chapter 13 plan, and that modifications to a confirmed plan can only occur "before the completion of payments under such plan." *See* 11 U.S.C. § 1329(a), (c). Given that only 41 days passed between her termination and the final payment in her 60-month plan, she argues it was not possible (practically) to "liquidate her claim and incorporate the proceeds into a modification of her plan that would increase payments to creditors."

We disagree. Assuming that 60 months is the maximum repayment period, *see* 11 U.S.C. §§ 1322(d), 1329(c), the bankruptcy court still had options for protecting the estate's and creditors' potential interest in the retaliation claim. Had Kimberlin notified the court of her potential claim within the 41-day period, it could have modified her Chapter 13 plan to grant creditors some

percentage of any future recovery. *See id.* § 1322(b)(9) ("A Chapter 13 plan may "provide for the *vesting of property of the estate*, on confirmation of the plan or *at a later time*, in the debtor or *in any other entity*.") (emphasis added). The court could also have converted the Kimberlins' Chapter 13 petition to Chapter 7 or dismissed the petition "for cause." *See* 11 U.S.C. § 1307(c) (identifying a nonexclusive list of "causes"). Because Kimberlin never amended her filings or otherwise disclosed the potential claim, she deprived the bankruptcy trustee, court, and creditors of any opportunity to consider possible options. Accordingly, we are not persuaded that Kimberlin lacked motive to conceal the claim.

Kimberlin next argues that the record lacks evidence of bad faith, relying on her sworn statement that "[i]t was never my intent to hide anything from the bankruptcy court handling my and my husband's chapter 13 case." Though we view the record in the light most favorable to Kimberlin, this court's "absence of bad faith" inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim. *See Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012) (declining to apply judicial estoppel where trustee's affidavits acknowledging awareness of suit presented a factual dispute regarding whether the debtor's omission was in bad faith); *Eubanks v. CBSK Fin. Grp., Inc.* 385 F.3d 894, 895–97 (6th Cir. 2004) (same, where evidence showed that debtor notified trustee of claim, asked trustee to pursue the claim on behalf of the estate, moved for a status conference on the claim, and moved to substitute the trustee as plaintiff in the suit). Kimberlin's affidavit alleging unintentional omission "pale[s] in comparison" to the evidence

No. 12-3584
*Kimberlin v. Dollar Gen. Corp.*

of good faith presented in *Stephenson* and *Eubanks*. *See Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 427 (6th Cir. 2005).

In light of her ongoing duty to disclose assets during bankruptcy, we cannot say that the omission resulted from mistake or inadvertence. *See White*, 617 F.3d at 480. Because judicial estoppel bars Kimberlin from pursuing this action, we do not reach her arguments regarding Ohio's public policy tort.

V.

For the above reasons, we AFFIRM.