**Steven Gregory DUNMORE,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Internal Revenue Service,**
**Defendant–Appellee.**

No. 02–15789.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 2003.

Filed Jan. 29, 2004.

Steven Gregory Dunmore, pro se, Napa, CA, for the plaintiff-appellant.

Randolph L. Hutter, Tax Division, U.S. Department of Justice, Washington, DC, for the defendant-appellee.

Before: GRABER, WARDLAW, and BYBEE, Circuit Judges.

BYBEE, Circuit Judge:

Pro se plaintiff Steven Dunmore sued the Internal Revenue Service ("IRS," or "Government") in district court seeking, *inter alia,* refunds for his alleged overpayments of taxes. The IRS contended that the bankruptcy estate, and not Dunmore, owned the unscheduled claims following Dunmore's bankruptcy. Pursuant to the parties' stipulation, the district court transferred the matter to the bankruptcy court to permit the bankruptcy trustee to administer, and possibly abandon, the refund claims. The trustee abandoned the claims. The bankruptcy court then denied Dunmore's request to transfer his action back to the district court for further proceedings, concluding that his case was a core proceeding and that it had authority to decide the matter. It subsequently dismissed his case for failure to prosecute the case in the bankruptcy forum. Dunmore appealed the bankruptcy court's dismissal, but the district court affirmed.

We conclude that, although the bankruptcy court had "related to" jurisdiction over Dunmore's tax refund claims, those claims constituted non-core proceedings. In view of this conclusion, the district court abused its discretion when it affirmed the bankruptcy court's final order dismissing Dunmore's case for failure to prosecute. Dunmore had not consented to a jury trial for his non-core proceedings in the bankruptcy court forum. Accordingly, we reverse the district court's judgment and remand for further proceedings consistent with our opinion.

FACTS AND PROCEEDINGS BELOW

In 1993, Dunmore administratively sought refunds from the IRS of three alleged tax overpayments made during 1989 and 1990. While awaiting an IRS decision on these refund claims, Dunmore consulted with his tax attorney to determine whether he should list these refund claims as assets on a voluntary Chapter 7 bankruptcy petition he was preparing: His attorney advised him that litigating the refund claims would be expensive and that, in view of the cost, it did not matter whether Dunmore scheduled the claims: The bankruptcy trustee likely would be unwilling to spend the money to litigate the matter, and Dunmore could not afford to litigate them himself. Dunmore then chose to omit the refund claims from his September 1995 bankruptcy petition. On October 20, 1995, Dunmore received formal notice that the IRS had disallowed the refund claims.

Around that same date, the IRS also notified Dunmore of an alleged tax deficiency for the 1991 tax year.

In February 1996, the bankruptcy court granted Dunmore's Chapter 7 bankruptcy petition and discharged his debt. Soon thereafter, the IRS notified Dunmore of additional alleged tax deficiencies for the 1987, 1992, and 1993 tax years that, together with the alleged 1991 tax year deficiency, would offset any tax refund Dunmore might recover.

On October 17, 1997, within two years of the date of the formal IRS disallowance of his refund claims, Dunmore timely filed his original complaint seeking a tax refund. 26 C.F.R. § 301.6532–1(a) (2003). He subsequently amended his complaint in April 1998 and filed a demand for a jury trial in May 1998. His amended complaint alleged six causes of action: three tax refund claims for overpayment of taxes to the IRS during pre-petition tax years; a claim that the IRS violated the bankruptcy court's discharge injunction; a quiet title action against IRS tax liens; and a request for a permanent injunction against the IRS.

In late September 1998, almost a year after Dunmore filed his original complaint, the Government raised for the first time its concern that Dunmore lacked prudential standing to pursue the three tax refund claims in federal court.[1] Dunmore, the Government argued, had denied the bankruptcy trustee an opportunity to administer the refund claims when he failed to schedule them on his bankruptcy petition as assets potentially available to satisfy his creditors. The Government contended that, as a result of Dunmore's failure to schedule these assets, the unadministered refund claims now belonged to the bankruptcy estate by operation of the

Bankruptcy Code, 11 U.S.C. § 554(d) (2000). Accordingly, Dunmore lacked prudential standing to pursue the estate's refund claims.

The Government urged the district court to dismiss Dunmore's complaint for lack of standing, without prejudice to refiling. In making this request, the Government knew that the limitations period on the refund claims had since expired and that Dunmore would be time-barred on refiling. Aware of his dilemma, Dunmore pleaded with the district court not to dismiss his case. As an alternative, he proposed that the district court sit in its original bankruptcy jurisdiction so as to permit him to reopen his bankruptcy case without refiling in the bankruptcy court and then seek the trustee's abandonment, or relinquishment, of the estate's refund claims to him. That approach would avoid dismissal and the attendant difficulty of his refund claims possibly being time-barred on refiling.

Instead, Judge Patel proposed transferring Dunmore's case to the bankruptcy court so as to permit Dunmore to seek the trustee's abandonment of the claims. She allowed that, following the trustee's abandonment of any of the claims, Dunmore could reopen his case in the district court. The Government stipulated to the transfer, and Dunmore acquiesced to the dismissal of his complaint's claims to quiet title relief and a permanent injunction against the IRS. Judge Patel then approved the parties' agreement and transferred Dunmore's case to the bankruptcy court.

In the bankruptcy court, Dunmore secured the abandonment of the three tax refund claims. In a February 1999 proceeding, the bankruptcy trustee expressed no interest in pursuing the estate's refund

---

**1.** Dunmore failed to argue, and the district court did not consider, whether the Government had waived its prudential-standing argument by raising its objection almost a year into the litigation. Any potential waiver objection is now itself waived.

claims, considering them to be frivolous. The bankruptcy court then ordered the trustee to abandon the claims to Dunmore. It concluded that the trustee cured Dunmore's lack of standing to pursue the refund claims when the trustee abandoned the claims to Dunmore.

Although this abandonment fulfilled the limited purpose initially motivating Judge Patel's transfer of the case to the bankruptcy court, Dunmore's case remained in the bankruptcy court and the parties proceeded with the case to trial.

In June 2000, Dunmore failed to attend a status conference that the bankruptcy court had twice continued during the previous six months. The court neither dismissed the case nor sanctioned Dunmore at that time, but issued a pretrial order that scheduled October 18, 2000, as a "date certain" for a bench trial in the bankruptcy court, and set dates for the completion of discovery and the exchange of documents.

Six days prior to the scheduled bankruptcy trial date, Dunmore, for the first time represented by counsel, moved the court to "transfer" the case back to the district court. He alleged that the bankruptcy court lost jurisdiction to hear his claims once the trustee abandoned the refund claims. In response, the IRS moved to dismiss Dunmore's complaint on account of his failure at that point to comply with the bankruptcy court's pretrial order.

On the scheduled trial date, Dunmore admitted he was not prepared to proceed with trial in the bankruptcy court. During the hearing, the bankruptcy court concluded that it had core jurisdiction over Dunmore's allegation that the IRS had violated the bankruptcy court's discharge injunction. In response, Dunmore voluntarily dismissed that claim, leaving only his three refund claims. The bankruptcy court then issued a final order dismissing his refund claims with prejudice for failure to prose-

cute. Dunmore appealed to the district court, and Judge Walker affirmed.

## STANDARD OF REVIEW

■■■ This court exercises plenary review over the decision of the district court sitting as an appellate court in this bankruptcy case. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1086 (9th Cir.2001). We review *de novo* whether Dunmore had prudential standing when he filed his complaint, *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 902 (9th Cir.), *cert. denied*, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002), whether the bankruptcy court had jurisdiction over the complaint, *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1279 (9th Cir.2000), and whether Dunmore was entitled to a jury trial in federal court, *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1377 (9th Cir.1997).

■■■ In addition, we review for an abuse of discretion the district court's decision to affirm the dismissal of Dunmore's case for failure to prosecute. *Link v. Wabash R.R.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). If the district court based its decision to affirm the dismissal on an inaccurate view of the law, it abused its discretion. *United States v. Iverson*, 162 F.3d 1015, 1026 (9th Cir.1998).

## DISCUSSION

*A. Whether Dunmore had standing to pursue his refund claims*

■■■ As a preliminary matter and alternative basis for affirming the district court, the Government questions Dunmore's standing to pursue his tax refund claims. To assert constitutional standing in this case, Dunmore must have suffered an "injury in fact" that is fairly traceable to the United States and that a favorable court decision could likely redress. *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). We conclude that Dunmore has constitutional standing. His complaint alleges an injury in fact, the overpayment of federal income taxes, that is fairly traceable to the IRS's refusal to refund the sums purportedly due Dunmore, and is redressable by the court if it were to award Dunmore his asserted refund.

■ Beyond this "irreducible constitutional minimum of standing," *id.* at 560, 112 S.Ct. 2130, we additionally require as a prudential matter that Dunmore assert his own legal interests as the real party in interest, *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Under this standard, Dunmore lacked prudential standing when he filed his action. The bankruptcy estate, and not Dunmore, was the real party in interest at that time. Dunmore, as a debtor seeking bankruptcy relief, had a duty to carefully schedule his assets, including his tax refund claims, on his bankruptcy petition. *Cusano v. Klein,* 264 F.3d 936, 945–46 (9th Cir.2001). Dunmore, however, breached this duty when he chose not to schedule his claims against the IRS on his Chapter 7 petition. By operation of statute, assets that Dunmore failed to schedule remained the bankruptcy estate's property, even after the court discharged his debt. 11 U.S.C. § 554(c), (d). Thus, the unscheduled tax refund claims remained the estate's property post-bankruptcy. Accordingly, we conclude that the bankruptcy estate was the real party plaintiff in interest at the time Dunmore filed his action.[2]

That Dunmore lacked prudential standing when he filed his complaint does not end our preliminary standing inquiry. Dunmore *may* have cured this standing defect. Federal Rule of Civil Procedure 17(a) permits Dunmore to obtain the real party in interest's ratification to proceed with the refund causes of action. Rule 17(a) enables Dunmore to avoid being dismissed for failing to be the real party in interest when he filed his complaint and being time-barred upon refiling. Provided Dunmore's decision to sue in his own name was an "understandable mistake," the real party in interest's ratification relates back to the October 17, 1997, filing date of the complaint. *United States v. CMA, Inc.,* 890 F.2d 1070, 1074 (9th Cir.1989); Note of Advisory Committee on 1966 Amendment to Fed.R.Civ.P. 17.

■ Here, the bankruptcy estate was the real party in interest because it owned the refund claims when Dunmore filed his October 1997 complaint. We assume without deciding that when the bankruptcy trustee abandoned the refund claims in February 1999, the abandonment could constitute the estate's ratification of Dunmore's lawsuit. This ratification would have the same effect as if the estate itself had originally commenced the action, so long as Dunmore's decision to sue in his own name represented an understandable mistake and not a strategic decision. *See, e.g., Wieburg v. GTE S.W., Inc.,* No. 3:98–CV–2057–R, 2002 WL 31156431, at *1, 2002 U.S. Dist. LEXIS 18141, at **6–7 (N.D.Tex. Sept. 26, 2002) (finding plaintiff did not make an understandable mistake

---

2. The Government's briefing also contended that the bankruptcy trustee, and not Dunmore, had to exhaust administratively the refund claims with the IRS. 11 U.S.C. § 505(a)(2)(B). The Government based this argument on its mistaken belief that Dunmore had attempted to exhaust the claims *after* he filed for bankruptcy, at a time when the claims belonged to the estate and the trustee alone could exhaust them. During oral argument, however, the Government withdrew that assertion because, in fact, Dunmore had exhausted the claims *before* he filed for bankruptcy, at a time when he still owned them and had standing to exhaust them himself.

where she sued in her own name after having concealed her discrimination claims from the bankruptcy trustee), *aff'd without opinion,* 71 Fed.Appx. 440 (5th Cir.2003).[3] During oral argument, the Government explained that whether Dunmore's decision to sue in his own name was an "understandable mistake" remained an open question because the bankruptcy court never made any factual findings on the issue.

We cannot conclude on the present record whether Dunmore may have recourse to Rule 17(a) to cure his prudential standing defect because of any "understandable mistake." Accordingly, we will remand to the district court for appropriate further factual findings. Because the district court and bankruptcy court dismissed this case on non-standing grounds, we address below the jurisdictional issues in the event that the court concludes on remand that Dunmore cured his standing defect.

*B. Whether the bankruptcy court had jurisdiction*

 Assuming Dunmore had prudential standing, we must resolve whether the bankruptcy court properly exercised jurisdiction over this case. In deciding this question, we first ask whether federal jurisdiction would exist *in the district court* over Dunmore's case in order to determine whether the bankruptcy court could have jurisdiction derivatively. *Fietz v. Great W.*

Sav. *(In re Fietz)*, 852 F.2d 455, 457 (9th Cir.1988). The district court has original jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b), but may refer any case or proceeding "related to" a case under Title 11 to the bankruptcy court for the district, 28 U.S.C. § 157(a). Dunmore's tax refund action "related to" his bankruptcy case if " 'the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " *Fietz,* 852 F.2d at 457 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)) (original emphases omitted).

 The district court had original bankruptcy "related to" jurisdiction over Dunmore's case. As of October 17, 1997, the date that Dunmore filed his complaint, the trustee had not yet abandoned the refund claims; they remained the bankruptcy estate's property until February 1999. Thus, Dunmore's complaint necessarily implicated the bankruptcy estate's assets. Because we determine subject-matter jurisdiction as of the complaint's filing date, Dunmore's lawsuit "related to" assets of the bankruptcy estate at the time relevant to our jurisdictional inquiry. *Id.* at 457 n. 2.

Having determined that the district court had jurisdiction, we next examine whether the bankruptcy court derivatively

---

3. Dunmore's prior omission of his tax refund claims during his Chapter 7 bankruptcy would ordinarily act as judicial estoppel against his asserting those very same claims against the Government. *See, e.g., Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 785 (9th Cir.2001) (judicially estopping a plaintiff from suing his insurer where he omitted his claims against the insurer from his bankruptcy schedule). However, rather than invoking judicial estoppel, District Judge Patel remedied Dunmore's inconsistent assertions by allowing him to reopen his bankruptcy case, thereby giving the bankruptcy trustee

an opportunity to administer the unscheduled claims. This approach prevented Dunmore from having his cake and eating it too: Dunmore risked that the trustee would retain, rather than abandon, the refund claims. This approach was a permissible alternative to judicial estoppel that prevented Dunmore from deriving an unfair advantage if not estopped. *New Hampshire v. Maine,* 532 U.S. 742, 751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Thus, albeit cumbersome, this approach prevented Dunmore from whipsawing the Government by undoing the effect of his omission of claims from his bankruptcy schedule.

had jurisdiction over Dunmore's case and exercised only those powers constitutionally available to it under 28 U.S.C. § 157. *Id.* at 457. In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court entertained a constitutional challenge to the creation of Article I bankruptcy courts pursuant to the Bankruptcy Act of 1978. The Court held that the Act violated Article III by conferring judicial power on bankruptcy judges who lacked life tenure and protection against salary diminution. *Id.* at 87, 102 S.Ct. 2858. The Act did not merely create the bankruptcy courts as adjuncts to the district courts, the Court reasoned, because they were not subject to sufficient control by an Article III district court. The adjunct's functions were not limited in such a way that an Article III court retained the "essential attributes" of judicial power, *id.* at 87, 102 S.Ct. 2858, because the bankruptcy courts could issue binding and enforceable final judgments, *id.* at 85–86, 102 S.Ct. 2858.

In response, Congress amended the Bankruptcy Code in 1984, providing the bankruptcy court with two tiers of judicial authority, depending upon whether the proceeding before it was "core" or "non-core." 28 U.S.C. § 157. This distinction forms the linchpin for bankruptcy court adjudication under the amended Act. In "core" proceedings, the bankruptcy court may hear, determine, and enter final orders and judgments. 28 U.S.C. § 157(b)(1). Acting as appellate courts, the district courts and the courts of appeal review the bankruptcy court's decisions in core matters. 28 U.S.C. § 158. In contrast, in "non-core" proceedings, the bankruptcy court is limited to hearing the matter and submitting proposed findings of fact and conclusions of law to the district court. The district court reviews de novo any finding or conclusion objected to and enters a final order and judgment. *See* 28

U.S.C. § 157(c)(1). If the parties consent, the district court may expand the bankruptcy court's power to adjudicate non-core proceedings to include the power to issue final orders and judgments. *See* 28 U.S.C. § 157(c)(2). The core/non-core distinction segregates those proceedings that an Article I legislative court may hear and decide by a final order from those that an Article III court must subject to non-deferential review as non-final orders.

Congress non-exhaustively enumerated what constitutes a "core" proceeding in 28 U.S.C. § 157(b)(2). The proceedings listed include matters affecting the administration of the estate, determinations as to the dischargeability of particular debts, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(A), (I), (O). That section, however, does not enumerate examples of, or define what constitutes, "non-core" proceedings. We determine Dunmore's claims to be "non-core" proceedings if they do not depend on the Bankruptcy Code for their existence and they could proceed in another court. *Sec. Farms v. Int'l Bhd. of Teamsters,* 124 F.3d 999, 1008 (9th Cir.1997). Although the district court had jurisdiction over all the claims asserted in the bankruptcy court, the bankruptcy court's power to adjudicate the claims varied among Dunmore's claims. When presented with a mixture of core and non-core claims, we must employ a claim-by-claim analysis to determine whether the bankruptcy court could enter a final order for that claim. *Halper v. Halper,* 164 F.3d 830, 839 (3d Cir.1999).

### 1. Violation of discharge injunction

 Dunmore's discharge injunction claim constitutes a core proceeding for which the bankruptcy court could enter a final order. The claim that the Govern-

ment violated the discharge injunction depends on the bankruptcy court's authority to enforce its own orders under the Bankruptcy Code. 11 U.S.C. § 105(a). Accordingly, this claim is a core proceeding.

### 2. Tax refund claims

Dunmore's tax refund claims are "noncore" proceedings. The tax refund claims do not depend on Title 11 for their existence, but instead depend on 28 U.S.C. § 1346(a)(1), and the trustee could have brought them in the district court. *Id.* Accordingly, we conclude that they are non-core proceedings under our *Security Farms* test. 124 F.3d at 1008.

Because Dunmore's refund claims were "non-core," the bankruptcy court could not enter a final judgment without Dunmore's consent. The district court read the definition of "core" proceeding too broadly when it concluded that the refund claims were core simply because they "affect[ed] ... the adjustment of the debtor-creditor ... relationship." 28 U.S.C. § 157(b)(2)(O). While it is true that the IRS alleged Dunmore owed it offsetting taxes that would reduce or eliminate any refund amount owed to him, § 157(b)(2)(O) is limited to those proceedings "affecting ... the adjustment of the debtor-creditor ... relationship" brought under Title 11. We have previously instructed that bankruptcy courts should read narrowly the § 157(b)(2)(O) "catch-all provision" to avoid potential constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent. *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.)*, 155 B.R. 521, 525 (9th Cir.BAP1993). Under this narrow construction, Dunmore's refund claims are non-core proceedings.

We acknowledge that our conclusion that Dunmore's federal tax refund claims are non-core proceedings, even where the IRS asserts an offset claim, may place our holding at odds with the Sixth Circuit's analysis of this issue. In *Gordon Sel–Way, Inc. v. United States (In re Gordon Sel–Way, Inc.)*, 270 F.3d 280 (6th Cir. 2001), the Sixth Circuit concluded with little discussion that a tax refund claim with an alleged IRS offset was a core proceeding because a refund claim with an offset would "affect the adjustment of the debtor-creditor relationship." *Id.* at 288 (discussing 28 U.S.C. § 157(b)(2)(O)). The Sixth Circuit's analysis, however, is problematic because it creates variation in a party's right to Article III adjudication: Whereas a refund claim with an IRS offset affects the debtor-creditor relationship and therefore is a core proceeding, a refund claim without a corresponding IRS offset would not affect the debtor-creditor relationship and would therefore not be a core proceeding. Thus, under the Sixth Circuit's view, whether a refund claim is a core or non-core proceeding depends on whether the IRS asserts an offset. The IRS's mere allegation of an offset to a tax refund would deprive a party of its right to Article III adjudication of its refund claim, to which, in the absence of any alleged IRS offset, it would ordinarily be entitled. Our approach treats all tax refund claims, whether the IRS alleges an offset or not, as non-core proceedings entitled to an Article III adjudicator. It thereby safeguards a party's right to a life-tenured judge with salary protection, irrespective of the Government's pleading.

Because the refund claims were non-core proceedings, the bankruptcy court's power to dispose of Dunmore's case was limited to hearing his case and submitting proposed findings of fact and conclusions of law to the district court. Accordingly, the bankruptcy court abused its discretion when it issued a final order of dismissal based on its belief that the refund claims were core proceedings, and the district

court reviewed the bankruptcy court's judgment under the incorrect standard. 28 U.S.C. § 158.

### C. Whether Dunmore had a right to a jury trial

 By statute Dunmore is entitled to a jury trial in the district court on his tax refund claims. The district court has jurisdiction to determine tax refund claims against the United States, 28 U.S.C. § 1346(a)(1), and must try these claims by jury if a party requests, 28 U.S.C. § 2402. The bankruptcy court is also authorized to conduct a jury trial in non-core proceedings, provided that the district court has "specially designated" the bankruptcy judge to conduct a jury trial and both parties have given their express consent. 28 U.S.C. § 157(e); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1194 (9th Cir.2003).

Dunmore asserted early on his right to a jury trial on his tax refund claims in the district court. He never consented to a jury trial in the bankruptcy forum. Moreover, the stipulation transferring Dunmore's matter to the bankruptcy court was silent with regard to any consent to a jury trial in that forum. His stipulation to transfer did not constitute consent to a jury trial in the bankruptcy court. District Judge Patel transferred Dunmore's case to the bankruptcy court to permit Dunmore to attempt to secure the trustee's abandonment of the tax refund claims without refiling; she did not transfer the case to have the bankruptcy court resolve any abandoned refund claims. Indeed, Dunmore asked the bankruptcy court to "transfer" his matter back to the district court for a jury trial. Only Dunmore, not the bankruptcy court, could withdraw his earlier written demand for a jury trial. Fed.R.Civ.P. 38(d); Local Fed. R. Bankr.P. 9015–1.

Furthermore, the bankruptcy court erred in suggesting that Dunmore had waived his right to a jury trial by seeking the trustee's abandonment of the refund claims. If Dunmore were to submit himself to the bankruptcy court's equity jurisdiction, he would waive any right to a jury trial for the resolution of those disputes "vital to the bankruptcy process," including disputes that are part of the claims-allowance process and the hierarchical reordering of his creditors' claims. *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1329–30 (2d Cir.1993). Here, however, the trustee's post-petition abandonment of the refund claims was not "vital to the bankruptcy process." It implicated neither the Chapter 7 claims-allowance process nor the hierarchical reordering of creditor's claims. Accordingly, Dunmore did not invoke the equitable jurisdiction of the bankruptcy court and, therefore, there was no possibility of waiver on that basis. We do not presume that Dunmore knowingly and willingly surrendered his jury trial rights for the resolution of a dispute that relates only incidentally to the bankruptcy process. *Id.* at 1330.

### D. Whether the bankruptcy court abused its discretion

We conclude that the bankruptcy court abused its discretion in dismissing Dunmore's complaint with prejudice for failure to prosecute. We do so for two reasons. First, the bankruptcy court dismissed Dunmore's refund claims by a final order because it incorrectly categorized them as core proceedings. We previously explained that the refund claims are non-core proceedings. They do not depend on the Bankruptcy Code for their existence and could have been brought in the district court. *Sec. Farms*, 124 F.3d at 1008. In the absence of Dunmore's consent, the bankruptcy court lacked any authority to

enter a final order in non-core proceedings. 28 U.S.C. § 157(c)(1).

Second, the bankruptcy court incorrectly concluded that Dunmore had no right to a jury trial in the district court and that, therefore, he had to proceed with his trial in the bankruptcy forum. Dunmore stood on his right to a jury trial in the district court forum; he withheld his consent to a jury trial on his non-core refund claims in the bankruptcy court. In the absence of Dunmore's consent, the bankruptcy court could not proceed to final judgment. Instead, the bankruptcy court should have certified the withdrawal of the district court's reference for "cause shown" and sent the case back to the district court. Indeed, under the local bankruptcy rule in effect at the time, if the parties had not filed written consent to a jury trial in a non-core proceeding, the bankruptcy judge was required to "certify to the district court that the proceeding is to be tried by a jury and that the parties have not consented to a jury trial in the bankruptcy court. Upon such certification, reference of the proceeding shall be automatically withdrawn...." Local Fed. R. Bankr.P. 9015–2(b). Thus, the bankruptcy court abused its discretion in dismissing Dunmore for failing to prepare for a bench trial in a forum he did not want.

To be sure, the Fourth Circuit has concluded that a bankruptcy court may postpone withdrawal of the reference where a party asserts a right to a jury trial in the district court. *Official Committee of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 128 (4th Cir.1993). In such an instance, a bankruptcy court may perform pretrial functions short of jury selection and trial, *see id.*, and presumably could dismiss a party's action for failure to comply with any pretrial order. Here, however, the Northern District of California's local bankruptcy rules dictate that the

withdrawal of the reference is "automatic" upon certification of the parties' lack of consent to a jury trial. Local Fed. R. Bankr.P. 9015–2(b). Given the Government's and Dunmore's refusal to consent to a jury trial in the bankruptcy court, the bankruptcy court abused its discretion in sanctioning Dunmore.

### CONCLUSION

For the foregoing reasons, we reverse the district court's judgment. We remand the case to the district court with instructions to permit (1) further factual findings on whether Dunmore's decision to file suit was an understandable mistake and, if so, (2) further action consistent with this court's opinion.

REVERSED and REMANDED.