Filed 6/12/15  De Jesus v. Aurora Loan Services CA2/3
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIGIDA LACAYANGA DE JESUS et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>AURORA LOAN SERVICES LLC, et al.,<br><br>Defendants and Respondents. | B251852<br><br>(Los Angeles County<br>Super. Ct. No. KC064539) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dan Thomas Oki, Judge.  Affirmed.

Law Office of Lotfy Mrich and Lotfy Mrich, for Plaintiffs and Appellants.

Akerman and Justin D. Balser, for Defendants and Respondents.

Plaintiffs are former occupants of a home on which the lender foreclosed in 2009 or 2010.  In this action, plaintiffs assert tort claims based on the alleged removal of plaintiffs' personal property from the home following the foreclosure and plaintiffs' eviction from the premises.  The trial court sustained defendants' demurrer to the complaint without leave to amend, concluding among other things that plaintiffs lacked standing to pursue their claims.  We find no error, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Background

Plaintiff Sumikat Castelone De Jesus (Sumikat) is the former owner of real property located at 3224 Stella Avenue, West Covina, California (the property).  Sumikat and his wife Brigida Lacayanga De Jesus (Brigida) occupied the property for several years; however, after Sumikat allegedly ceased making payments on a loan secured by the property, the property was sold at a trustee sale and the De Jesuses were evicted.

Apparently in connection with the sale of the property and their eviction from it, Sumikat filed two separate bankruptcy proceedings.[1]  The first, filed July 7, 2011, was dismissed the same month, apparently for failure to file required schedules, statements, or a plan.  The second, filed June 15, 2012, resulted in a bankruptcy discharge on September 28, 2012.

Brigida also filed several bankruptcy proceedings.  One proceeding, filed July 22, 2011, was dismissed, apparently because Brigida failed to appear at a meeting of creditors.  The second, an adversary proceeding, was filed November 15, 2011, and dismissed October 4, 2012.  The third, filed September 5, 2012, resulted in a bankruptcy discharge on December 28, 2012.

---

[1]     Our discussion of the parties' bankruptcy filings is based on bankruptcy court documents of which the trial court took judicial notice.

2

## II.

## The Present Action

Brigida and Sumikat (collectively, plaintiffs) filed the present action on August 29, 2012, and filed the operative first amended complaint (complaint) on April 29, 2013. The complaint alleges as follows:

Plaintiffs "were in legal possession of" real property located at 3224 Stella Avenue, West Covina, California. Brigida filed for bankruptcy in May 2011; two months later, in July 2011, defendants Aurora Loan Services LLC (Aurora), Lehman Brothers (Lehman), and Wells Fargo Bank (Wells Fargo) filed an unlawful detainer action. Subsequently, although defendants knew a bankruptcy stay was in place, they evicted plaintiffs from the property. Plaintiffs made a motion in the bankruptcy court to have possession of the property restored to them; the bankruptcy court found that defendants had violated the bankruptcy stay and granted the motion. Upon their return to the property, plaintiffs found it empty, and defendants have failed to return any of plaintiffs' personal property to them.

Plaintiffs allege defendants' conduct gave rise to three causes of action against all defendants: (1) conversion, (2) trespass to land and chattel, and (3) abuse of process. Plaintiffs sought compensatory and punitive damages and attorney fees.

## III.

## Demurrer

Aurora and Wells Fargo (collectively, defendants) demurred to the complaint.[2] Defendants urged that because plaintiffs did not list the tort claims on their bankruptcy schedules, the tort claims belonged to the bankruptcy estates, not to the plaintiffs; alternatively, defendants contended that each cause of action failed to state a claim. Plaintiffs opposed the demurrer.

---

[2]     Although the complaint names three defendants, only two (Aurora and Wells Fargo) demurred and filed a respondents' brief on appeal. The third defendant, Lehman Brothers, did not appear in the action.

3

During the hearing on the demurrer, plaintiffs' counsel conceded that neither plaintiff had listed the claims asserted in this case on his or her bankruptcy schedule. Counsel asserted, however, that plaintiffs could not have listed the claims because they did not then know about them. Defendants' counsel disagreed, urging that plaintiffs had to have known about the claims when they filed their 2012 bankruptcy petitions because Brigida had asserted the very same claims in an adversary proceeding in the bankruptcy court in 2011.

The trial court sustained the demurrer without leave to amend on August 5, 2013. As a preliminary matter, the court took judicial notice of court records and documents recorded with the Los Angeles County Recorder's Office (Exhibits 1-22 of the defendants' request for judicial notice). It then concluded that plaintiffs' failure to list their claims on their bankruptcy schedules estopped them from pursuing those claims; in the alternative, the court found that plaintiffs failed to properly state claims for conversion, trespass, or abuse of process.

The court entered a judgment of dismissal with prejudice on April 15, 2013. Plaintiffs timely appealed.[3]

## DISCUSSION

### I.

### Standard of Review

"In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all properly pleaded facts. We examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory regardless of the label attached to a cause of action. (*Doe v. Doe 1* (2012) 208 Cal.App.4th 1185, 1188.) We do not assume the truth of contentions, deductions, or conclusions of fact or law, and may disregard allegations that are contrary to the law or to a fact that may be judicially noticed. A demurrer is proper when a ground for objection

---

[3] On January 26, 2015, plaintiffs filed a request in this court for judicial notice of seven bankruptcy court documents. On February 19, 2015, we issued an order deferring ruling on the request for judicial notice; we now grant the request.

to the complaint appears on its face or from matters of which the court may or must take judicial notice.  (*Id*. at pp. 1188–1189.)

"We will affirm an order sustaining a demurrer on any proper legal ground whether or not the trial court relied on that theory or it was raised by the defendant.  (*Rossberg v. Bank of America, N.A*. (2013) 219 Cal.App.4th 1481, 1490-1491; *Henry v. Associated Indemnity Corp*. (1990) 217 Cal.App.3d 1405, 1413, fn. 8.)

"Finally, whether leave to amend should have been granted is reviewed under the abuse of discretion standard, although error is shown if there is any reasonable probability an amendment that cures the defect can be made.  Appellants bear the burden on appeal of showing a reasonable possibility exists that the complaint can be successfully amended.  (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458.)"  (*Fischer v. Time Warner Cable Inc*. (2015) 234 Cal.App.4th 784, 790, fn. omitted.)

## II.

## The Trial Court Did Not Abuse Its Discretion by Sustaining the Demurrer Without Leave to Amend

Although plaintiffs urge that the trial court erred by sustaining the demurrer, their entire argument on appeal is only four pages.  In those four pages, plaintiffs briefly discuss the elements of their causes of action, but they do not demonstrate through citations to the record or reasoned legal argument that their complaint alleges such elements.  Further, although plaintiffs contend that the trial court's analysis of standing is in error, they do not explain how.

" ' "Appellate briefs must provide argument and legal authority for the positions taken.  'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " [Citation.] "We are not bound to develop appellants' arguments for them. [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." ' (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)"  (*Holguin v. DISH Network LLC* (229 Cal.App.4th 1310, 1322, fn. 5.)  Thus,

because plaintiffs do not offer legal analysis or argument in support of their assertions of error, their contentions are waived.

In any event, even were we to consider plaintiffs' arguments on the merits, we would still affirm the trial court's order sustaining the demurrer because plaintiffs lack standing to prosecute the tort claims asserted here. Pursuant to section 541 of the Bankruptcy Code, the filing of a bankruptcy petition creates a "bankruptcy estate" that contains " 'all legal or equitable interests of the debtor in property as of the commencement of the case.' " (*Cusano v. Klein* (9th Cir. 2001) 264 F.3d 936, 945 (*Cusano*), quoting 11 U.S.C. § 541(a)(1).) Causes of action, including pre-petition tort causes of action, "are included within the broad scope of § 541." (*In re Goldstein* (9th Cir. BAP 2015) 526 B.R. 13, 21.)

The Bankruptcy Code places an affirmative duty on debtors to schedule their assets and liabilities. (*Cusano*, *supra*, 264 F.3d at p. 945, citing 11 U.S.C. § 521(1).) If a debtor fails to properly schedule an asset, *including a cause of action*, that asset continues to belong to the bankruptcy estate and does not revert to the debtor upon discharge. (*Ibid*.) As one court has explained, "By operation of statute, assets that [debtor] failed to schedule remained the bankruptcy estate's property, even after the court discharged his debt. 11 U.S.C. § 554(c), (d)." (*Dunmore v. U.S.* (9th Cir. 2004) 358 F.3d 1107, 1112.)

Thus, if the causes of action alleged in the complaint arose pre-petition but were not included in the plaintiffs' bankruptcy schedules, they belong to plaintiffs' respective bankruptcy estates, not to the plaintiffs, and the plaintiffs lack standing to assert them. (See *Dunmore v. U.S.*, *supra*, 358 F.3d at p. 1112 [holding that debtor lacked standing to assert pre-petition claims against the Internal Revenue Service because he failed to include them on his bankruptcy schedules and thus "the unscheduled tax refund claims remained the estate's property post-bankruptcy"].)

The documents of which the trial court took judicial notice demonstrate that the claims asserted in the present case arose no later than 2011, the year *before* plaintiffs filed the petitions that resulted in their bankruptcy discharges. Those documents include Brigida's adversarial complaint filed on November 15, 2011, in bankruptcy case

6

No. 41338 (adversarial complaint), which, like the complaint in the present case, alleged that defendants evicted plaintiffs from their home in violation of an existing bankruptcy stay. Both the present and adversarial complaints allege that "Plaintiffs suffered severe emotional distress and humiliation before their neighbors, and friends, as they stood outside their home begging to retrieve their medication and other essentials, which they were refused," and both allege that "[u]pon returning home, Plaintiffs found their home empty, except for a roll of toilet paper hanging in the bathroom." Finally, both the present and adversarial complaints assert causes of action for conversion of personal property, trespass to land and "chuttel,"[4] and abuse of process.

Based on the allegations of Brigida's November 15, 2011 adversarial complaint, there can be no dispute that plaintiffs knew of the existence of their causes of action for conversion, trespass, and abuse of process no later than November 15, 2011. Nonetheless, neither plaintiff listed these tort causes of action as assets of their respective bankruptcy estates in bankruptcy proceedings filed the following year.[5] To the contrary, both plaintiffs specifically indicated on their bankruptcy schedules that they had *no* property in the form of "[c]ontingent and unliquidated claims . . . , including tax refunds, counterclaims of the debtor, and rights to setoff claims." Accordingly, the causes of action at issue in this case remained the property of plaintiffs' bankruptcy estates, and plaintiffs lack standing to assert them. The trial court did not err in so concluding.

Plaintiffs further urge that if we conclude the demurrer was properly sustained, we should remand the case to the trial court to allow plaintiffs to amend their complaint. We do not agree. " 'The [trial] court abuses its discretion in sustaining the demurrer without leave to amend if the plaintiff can show a reasonable possibility of curing the defect in the complaint by amendment. [Citation.] [Plaintiff] has the burden of proving that an

---

[4] Indeed, the identical misspelling—"chuttel"—appears in both the present and the adversarial complaints.

[5] Sumikat filed a Chapter 7 bankruptcy petition on June 15, 2012, and Brigida filed a Chapter 13 bankruptcy petition, which was subsequently converted to a Chapter 7 petition, on September 5, 2012.

amendment would cure the defect.  [Citation.]"  (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 994.)  Here, plaintiffs have made no showing that the defect could be cured by amendment; therefore, the trial court did not abuse its discretion in denying plaintiffs leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed.  Defendants are awarded their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

EGERTON, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.