

# NUMBER 13-19-00548-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

LEROY RAMIREZ,                                                        Appellant,

v.

BANK OF AMERICA, N.A.;
SETERUS, INC.; AND FEDERAL
NATIONAL MORTGAGE ASSOCIATION,                                        Appellees.

---

### On appeal from the 156th District Court
### of Bee County, Texas.

---

# OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Opinion by Justice Benavides

Standing "is a word of many, too many, meanings." *Pike v. Tex. EMC Mgmt.*, 610 S.W.3d 763, 773 (Tex. 2020) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). In this case, we must decide whether a debtor lacked constitutional standing to bring claims belonging to the bankruptcy estate, thereby depriving the trial

court of subject matter jurisdiction over the suit, or if the trustee's so-called "exclusive standing" to bring the claims actually raised an issue of capacity that did not implicate the trial court's subject matter jurisdiction. Because we agree with appellant Leroy Ramirez that he had constitutional standing to bring claims against appellees Bank of America, N.A., Seterus, Inc., and Federal National Mortgage Association, we reverse the trial court's judgment of dismissal for want of jurisdiction and remand the case to the trial court.

## I. BACKGROUND

According to his live pleading, Ramirez executed a promissory note secured by a deed of trust to purchase his family home in 2007. Unable to meet his obligations under the note, Ramirez contacted Bank of America in the spring of 2008 to discuss his options. Bank of America informed him that it offered a mortgage modification program, but to qualify, Ramirez was required to miss payments and enter the foreclosure process. Ramirez alleges that Bank of America instructed him to ignore the foreclosure warnings he would receive and, relying on Bank of America's representations, Ramirez defaulted on the note.

Approximately one year later, Bank of America informed Ramirez that he had qualified for the modification program but was required to make trial payments in April, May, and June of 2009. Ramirez made the payments on time and in full, and Bank of America continued to assure him that he had qualified for the modification and that his mortgage would not be foreclosed.

On June 2, 2009, contrary to its representations, Bank of America foreclosed on the mortgage and sold the property to the Federal National Mortgage Association (Fannie

Mae). Unaware of the foreclosure, Ramirez executed a loan modification agreement with Bank of America on July 16, 2009. Thereafter, Bank of America sent Ramirez monthly statements representing that he held a valid in-force mortgage under the terms of the modification and accepted his payments under the terms of the modification, including escrow payments for insurance and taxes.

In October 2011, Seterus became the mortgage servicer. Like Bank of America, Seterus sent Ramirez monthly statements representing that he held a valid in-force mortgage and collected his monthly payments under the terms of the modification agreement, including escrow payments for insurance and taxes.

In 2013, Ramirez and his wife filed for Chapter 13 bankruptcy and listed the property as an asset in their bankruptcy schedules. Their petition was later converted to a Chapter 7 bankruptcy, and they received discharges from the bankruptcy court in January 2014.

In 2017, after continuing to make mortgage payments in the intervening years, Ramirez contacted Seterus to discuss executing a deed-in-lieu of foreclosure. It was at this point that Ramirez discovered the 2009 foreclosure. He filed suit that same year, alleging wrongful foreclosure against Bank of America; fraud, unjust enrichment, and breach of contract against Bank of America and Seterus; violations of the Texas Debt Collection Act against Seterus; and trespass to try title against Fannie Mae.

In 2018, the bankruptcy court granted Ramirez's motion to reopen his bankruptcy, and Ramirez filed amended schedules listing his litigation claims as exempt assets. After the bankruptcy trustee objected to the claimed exemption, Ramirez and the trustee

3

reached an agreement, approved by the bankruptcy court, that Ramirez and the trustee would jointly prosecute the case, Ramirez's counsel would be retained as special litigation counsel for the estate, and Ramirez and the estate would divide any net recovery evenly, with one-half of the net recovery distributed to Ramirez as part of his exempt property. Thereafter, Ramirez amended his petition in state court, but the trustee was not added as a plaintiff, and the petition does not indicate that Ramirez is acting in a representative capacity.

Bank of America subsequently filed a plea to the jurisdiction, joined by Seterus and Fannie Mae, arguing the trial court lacked subject matter jurisdiction because Ramirez lacked standing when he filed the original petition. Their argument stated that: (1) Ramirez's claims accrued before he filed his bankruptcy petition; (2) pre-petition claims belong to the bankruptcy estate; (3) the trustee had "exclusive standing" to assert claims belonging to the estate; (4) Ramirez, not the trustee, filed the suit; and (5) standing is determined at the time the suit is filed and cannot be cured. The trial court granted the plea, dismissing the claims without prejudice, and this appeal ensued.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

The existence of subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleading liberally, taking all factual assertions as

4

true, and look to the plaintiff's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law. *Id.* Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is a question of law. *Id.*

A plaintiff's standing to assert a claim is a component of a trial court's subject matter jurisdiction, and subject matter jurisdiction is essential to a court's authority to decide a case. *Tex. Air Control Bd.*, 852 S.W.2d at 443. To satisfy Article III standing under the U.S. Constitution—i.e., the limitation on judicial power to resolve only "Cases" and "Controversies"—a plaintiff must suffer an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable judicial decision. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The Texas standing requirements parallel the federal test for Article III standing," *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam), demanding "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012) (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 307 (Tex. 2008)). Accordingly, Texas courts look to federal courts for guidance on the standing doctrine. *See, e.g.*, *Tex. Air Control Bd.*, 852 S.W.2d at 444.

Like standing, a plaintiff must have capacity to bring a lawsuit. *Pike*, 610 S.W.3d at 774 (citing *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880,

884 (Tex. 2001)). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it had the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* (quoting *Coastal Liquids Transp.*, 46 S.W.3d at 884). A plaintiff lacks capacity when he "is not entitled to recover in the capacity in which he sues." TEX. R. CIV. P. 93(2). A plaintiff's lack of capacity does not implicate the trial court's subject matter jurisdiction. *See Coastal Liquids Transp., L.P*, 46 S.W.3d 884 (providing that, unlike standing, a challenge to a plaintiff's lack of capacity can be waived).

"Standing must exist at the time a plaintiff files suit and must continue to exist between the parties at every stage of the legal proceedings, including the appeal." *Martin v. Clinical Pathology Lab'ys, Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, pet. denied). The case must be dismissed if the plaintiff lacks standing at the time suit is filed—even if the plaintiff later acquires an interest to support standing. *Id.* A lack of capacity, on the other hand, may be subsequently cured. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 846, 852–53 (Tex. 2005).

### III.    DISCUSSION

In what we construe as two issues, Ramirez contends that he has both constitutional standing and capacity to bring his claims.

### A.    Standing

"It is well established that any causes of action belonging to the debtor are property that becomes part of the estate once the bankruptcy petition is filed." *In re Croft*, 737 F.3d 372, 375 (5th Cir. 2013) (per curiam) (citing *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d

6

380, 385 (5th Cir. 2008) (per curiam)); *see* 11 U.S.C. § 541(a)(1). In determining whether a cause of action is property of the estate, a court must consider whether under state law the debtor could have asserted the action as of the commencement of the case. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) (citing *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994)). We assume for purposes of this appeal that Ramirez could have asserted his claims at the time he filed his bankruptcy petition, and therefore his claims vested in the bankruptcy estate.

Courts have repeatedly said that "[o]nce a claim belongs to the estate, the trustee has *exclusive standing* to assert the claim."[1] *In re Croft*, 737 F.3d at 375 (emphasis added) (citing *In re Educators Grp. Health Tr.*, 25 F.3d at 1284). It appears—at least in Fifth Circuit jurisprudence—that the "exclusive standing" label first appeared in *In re Educators Group Health Trust. See* 25 F.3d at 1284. The issue in that case, however, was whether the bankruptcy court applied the correct legal standard in determining whether certain causes of action belonged to the debtor or the estate, not whether the debtor had constitutional standing when it filed suit. *Id.* at 1283.

Fifteen years later, the Supreme Court of Texas, citing *In re Educators Group Health Trust* for the proposition that the trustee had "exclusive standing" to assert claims belonging to the estate, concluded the trial court lacked subject matter jurisdiction over the debtor's claims because "[s]tanding is a component of subject matter jurisdiction." *Douglas v. Delp*, 987 S.W.2d 879, 882–83, 886 (Tex. 1999). Several courts of appeals,

---

[1] We note that some courts have held that, unlike Chapter 7, a debtor in Chapter 13 bankruptcy retains "standing" to sue on claims belonging to the estate. *Martin v. Clinical Pathology Lab'ys, Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, no pet.) (collecting cases).

relying on the same authority, have reached the same conclusion. *Raytheon Co. v. Boccard USA Corp.*, 369 S.W.3d 626, 631–32, 638 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Munters Corp. v. Locher*, 936 S.W.2d 494, 496, 498 (Tex. App.—Houston [14th Dist.] 1997, writ denied); *Depumpo v. Thrasher*, No. 05-14-00967-CV, 2016 WL 147294, at *3–4 (Tex. App.—Dallas Jan. 13, 2016, no pet.) (mem. op.). Each court, including *Delp*, assumed that "exclusive standing" necessarily meant constitutional standing, but none applied the well-known three-part test for constitutional standing—injury in fact, causation, and redressability. *See Delp*, 987 S.W.2d at 882–86; *Raytheon Co.*, 369 S.W.3d at 631–38; *Munters Corp.*, 936 S.W.2d at 496–98; *Depumpo*, 2016 WL 147294, at *3-4.

In contrast, as Ramirez correctly points out, federal courts recognize a distinction between the concepts of constitutional standing and prudential standing, "a doctrine not derived from Article III." *Lexmark Int'l*, 572 U.S. at 126. Although not exhaustively defined, prudential standing includes, among others, a general prohibition on raising legal rights belonging to another. *Id.* Unlike constitutional standing, prudential standing does not implicate a federal court's subject matter jurisdiction. *See id.* at 125–26. As it relates to this case, federal courts, including the Fifth Circuit Court of Appeals, now recognize that a debtor's right to assert a claim belonging to the estate is a question of prudential standing or capacity, not constitutional standing. *Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019) (finding trustee's "exclusive standing" to pursue claim belonging to the estate did not implicate Article III standing doctrine, "but rather the 'real-party-in-interest' requirement"); *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017) ("[T]here is a key

8

jurisdictional distinction between a challenge that a plaintiff lacks Article III standing and one that she is not the real party in interest."); *Dunn v. Advanced Med. Specialties, Inc.*, 556 F. App'x 785, 789 (11th Circ. 2014) (per curiam) ("The Trustee confuses the principle of jurisdictional standing under Article III of the United States Constitution, which would impact the court's subject matter jurisdiction, with the principle of real party in interest, which does not impact the court's subject matter jurisdiction."); *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013) ("The standing problem here—whether a debtor or only a bankruptcy trustee has the right to prosecute legal claims related to the bankruptcy estate—is better characterized as a real-party-in-interest question governed by Rule 17."); *Dunmore v. U.S.*, 358 F.3d 1107, 1111–12 (9th Cir. 2004) (finding debtor had constitutional, but not prudential, standing to assert claim belonging to bankruptcy estate) *see also* William V. Dorsaneo III, *The Enigma of Standing Doctrine in Texas Courts*, 28 REV. LITIG. 35, 67 (2008) (noting that Federal Rule 17(a), which requires that an action be prosecuted in the name of the real party in interest, is the functional equivalent of Texas Rule 93(2), which requires that the plaintiff be entitled to recover in the capacity in which he sues (citations omitted)). Moreover, each federal court found that the trustee's "exclusive standing" could not be jurisdictional in nature for one simple yet irrefutable reason—the debtor satisfied the test for Article III standing. *Martineau*, 934 F.3d at 391; *Norris*, 869 F.3d at 366; *Dunn*, 556 F. App'x at 790; *Kimberlin*, 520 F. App'x at 314; *Dunmore*, 358 F.3d at 1112.

As our high court recently noted, "Texas courts, having drawn upon the standing doctrine of our federal counterparts, sometimes apply the label 'standing' to statutory or

prudential considerations that do not implicate subject matter jurisdiction." *Pike*, 610 S.W.3d at 773–74 (quotation marks omitted) (quoting *Lexmark Int'l*, 572 U.S. at 128); *see also Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, No. 18-1223, 2021 WL 299166, at *6 (Tex. Jan. 29, 2021) ("[L]ast Term in *Pike v. EMC Management, LLC*, we discouraged the use of the term *standing* to describe extra-constitutional restrictions on the right of a particular plaintiff to bring a particular lawsuit."). We believe that *Delp* and its progeny are such examples: seizing on the "exclusive standing" label from *In re Educators Group Health Trust*, they conflated prudential considerations with constitutional standing. *See id.*; *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 163 n.7 (5th Cir. 2016) (noting that "the intermingling of standing and capacity issues is not uncommon" (citing Dorsaneo III, *The Enigma of Standing Doctrine in Texas Courts*, *supra*, at 65)); *In re Unger & Assoc. Inc.*, 292 B.R. 545 550 (Bankr. E.D. Tex. 2003) ("Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle."). If these courts had analyzed the debtors' allegations for constitutional standing, instead of merely assuming the trustees' "exclusive standing" deprived the trial courts of subject matter jurisdiction, then they would have reached different conclusions. *See, e.g.*, *Delp*, 987 S.W.2d at 880–82 (finding debtor lacked constitutional standing even though he alleged garden variety malpractice claim against former attorneys).

Although we are mindful of the importance of stare decisis, "the doctrine is not absolute." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 779 (Tex. 2011) (quoting *Sw. Bell Tel. Co. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008)). "Stare decisis prevents change

for the sake of change; it does not prevent any change at all." *Gutierrez v. Collins*, 583 S.W.2d 312, 317 (Tex. 1979). The doctrine "does not compel us to follow a past decision when its rationale no longer withstands 'careful analysis.'" *Arizona v. Gant*, 556 U.S. 332, 348 (2009) (quoting *Lawrence v. Texas*, 539 U.S. 558, 577 (2003)); *Cook*, 354 S.W.3d at 779. Because *Delp* was based on an unsound assumption, we adopt the more recent and well-reasoned approach of our federal counterparts and hold that whether a Chapter 7 debtor has authority to bring a claim belonging to the bankruptcy estate is a question of capacity that does not implicate the trial court's subject matter jurisdiction.

In this case, we conclude that Ramirez's allegations satisfy constitutional standing. He has alleged concrete injuries to himself and a real controversy between the parties that will be resolved by the court. *See Heckman*, 369 S.W.3d at 154. Indeed, based on his petition, there can be no doubt that Ramirez was personally aggrieved, regardless of whether he had authority to bring the claims. *See Pike*, 610 S.W.3d at 774. Therefore, the trial court erred in granting appellees' plea to the jurisdiction, and we sustain Ramirez's first issue.

## B.     Capacity

Appellees ask us to affirm the judgment on the alternative ground that Ramirez lacks capacity. Although the bankruptcy court approved Ramirez's agreement with the trustee to prosecute the claims jointly, appellees contend that Ramirez was required to join the trustee. Ramirez responds that the bankruptcy court's order, which has become final, cured any defect in his capacity that may have existed at the time he filed his petition. *See Lovato*, 171 S.W.3d at 853 (allowing plaintiff to cure defect in capacity after petition

11

was filed). We agree with Ramirez. The bankruptcy court's order clearly grants him the *authority* to prosecute the claims in his individual capacity. *See* TEX. R. CIV. P. 93(2); *Pike*, 610 S.W.3d at 774. We offer no opinion on the separate issue of whether the trustee should be joined as a necessary party but note that any such defect would not be jurisdictional. *See* TEX. R. CIV. P. 39; *Kodiak Res., Inc. v. Smith*, 361 S.W.3d 246, 250 (Tex. App.—Beaumont 2012, no pet.). We sustain Ramirez's second issue.

## IV.   CONCLUSION

"While our Constitution requires vigilance lest courts overstep their jurisdictional bounds, courts also must dutifully exercise jurisdiction rightly theirs." *Heckman*, 369 S.W.3d at 144. Because the trial court did not exercise its rightful jurisdiction in this case, we reverse and remand for proceedings consistent with this opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
25th day of March, 2021.

12